# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 04-2469

—————

United States of America,     *
        *
      Appellee,     *
        *   Appeal from the United States
   v.       *   District Court for the
        *   Southern District of Iowa.
Anthony Thomas Claybourne,     *
        *
      Appellant.     *

—————

Submitted: December 15, 2004
Filed: August 1, 2005

—————

Before LOKEN, Chief Judge, MORRIS SHEPPARD ARNOLD and RILEY, Circuit Judges.

—————

RILEY, Circuit Judge.

After a two-day jury trial, Anthony Claybourne (Claybourne) was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Finding Claybourne was an armed career criminal, see 18 U.S.C. § 924(e), U.S.S.G. § 4B1.4, the district court[1] sentenced Claybourne to 235 months' imprisonment. On appeal, Claybourne claims (1) insufficient evidence supports his conviction, (2) the

———

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

district court abused its discretion in admitting drug-related evidence, (3) the United States Sentencing Guidelines (Guidelines) are unconstitutional, and (4) the district court unconstitutionally enhanced Claybourne's sentence based on the court's findings that Claybourne had three prior felony convictions. We affirm Claybourne's conviction and sentence.

## I.    BACKGROUND

On May 28, 2003, members of the Mid-Iowa Narcotics Task Force executed a search warrant of Claybourne's residence. Before police officers entered the residence, Officer Joseph Torruella (Officer Torruella) looked through a window and noticed someone moving inside the residence. Upon entering the residence, the officers encountered Claybourne, who was the only person in the residence. The officers also discovered the residence had only two small bedrooms. When officers searched the bedroom where Officer Torruella had seen movement, they discovered (1) an Iowa nondriver identification card for Claybourne; (2) Claybourne's Social Security card; (3) a wireless telephone bill in Claybourne's name inside a shoe box; (4) another identification card for Claybourne inside a box on the top shelf of the closet; (5) a hand scale inside the closet; (6) a box of sandwich baggies; (7) a digital scale buried under some socks inside a dresser drawer; and (8) $950 in cash wrapped in a rubber band inside a sock in a clothes basket.

The police also discovered a double extra large man's t-shirt on the top shelf of the closet. Concealed inside the t-shirt were an Intratec, Model TEC-9, 9mm, semiautomatic pistol, its barrel, and its magazine containing twenty-nine rounds of ammunition.[2] No identifiable prints were discovered on the firearm.

---

[2]At trial, the parties stipulated that Claybourne previously had been convicted of a felony, the pistol and its ammunition had been manufactured outside of Iowa, and the pistol functioned as a firearm on the day it was discovered.

The government charged Claybourne with being a felon in possession of a firearm and ammunition. Claybourne pled not guilty. Granting, in part, Claybourne's motion in limine to exclude drug-related evidence, the district court allowed the government only to submit evidence that the firearm "was found in the presence of drug material, drug paraphernalia." Evidence of other drug activities and related investigations was not allowed.

At trial, Claybourne called two witnesses–Nicole Cratty (Cratty) and Angel Ball (Ball). Cratty, who had known Claybourne only since May 2003, testified the firearm found in the closet did not belong to Claybourne: "I know that the weapon was not his. . . . Because I'm the one that put it at the top of the cupboard in the house." Cratty testified she first discovered the firearm while she was packing to move on May 4 or 5. Cratty said she found the firearm wrapped inside a gray t-shirt above the kitchen cupboard at her apartment. Cratty said Claybourne had never been to her apartment, but she had allowed a man from Omaha to stay at her apartment from the end of April to the beginning of May. Cratty testified she did not know the man's full name, address or phone number. After consulting Ball, who was helping her move, Cratty decided to take the firearm with her to her next residence. Cratty did not stay long at that residence, and decided to move to another apartment on May 28. Before she moved into the apartment, Cratty stayed with Claybourne in his bedroom on May 26 and 27. Cratty testified that, on May 27, she decided she wanted to go to the bar and "didn't want to get pulled over with [the firearm] in [her] vehicle," so she "put [the firearm wrapped inside the t-shirt] in the cupboard above the closet in the first bedroom at [Claybourne]'s." Cratty said she put the firearm and the t-shirt in the closet about 9:00 p.m. Cratty testified "[n]obody was there when I did it," and she never told Claybourne she put the firearm in his closet. At approximately 3:00 or 4:00 a.m. on May 28, Cratty, Claybourne and another friend returned to Claybourne's residence. After leaving the apartment on the morning of May 28, Cratty never returned to Claybourne's residence, never showed the firearm to Claybourne, and never talked to Claybourne about the firearm.

Ball testified she has known Cratty since elementary school, but had never met Claybourne. Ball testified she was the only person who helped Cratty move in early May 2003, but had not talked to Cratty "for a long time" before that day. Ball stated that, while she was in another room packing, Cratty "hollered for me to come into the kitchen and had me get up on the counter to look, and there was a gun there." Ball identified the firearm at trial as the one she saw when she was helping Cratty move. Ball also stated the firearm was wrapped in a gray t-shirt, but did not know if the t-shirt produced at trial was "the exact one." Although Ball first testified she had never met Claybourne and did not visit Claybourne in jail, Ball later admitted–after the government produced jail visitation records with Ball's handwriting–she had visited Claybourne while he was in jail.

At the close of the government's case and again at the close of all of the evidence, Claybourne moved for judgment of acquittal. The district court denied the motion both times. After the two-day trial, a jury convicted Claybourne on the felon-in-possession charge.

The United States Probation Office prepared a presentence investigation report (PSR), which contained ten pages listing Claybourne's adult convictions. The PSR calculated a criminal history category of VI. Based on Claybourne's prior convictions for second-degree burglary, third-degree burglary, escape, and assault with intent to inflict serious injury (two convictions for this offense), the PSR concluded Claybourne should be sentenced as an armed career criminal under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4. Claybourne lodged an objection to the PSR, contending "he is not an armed career criminal," because the predicate offenses are not crimes of violence. Overruling Claybourne's objections, the district court concluded Claybourne's two prior felony burglary convictions and felony escape conviction required that Claybourne be sentenced as an armed career criminal. Calculating an offense level of 33 and a criminal history category of VI, the district court determined the Guidelines sentencing range was 235 to 293 months'

imprisonment. When allowed "to address . . . the issue of where in the guideline range sentencing is appropriate," Claybourne's attorney stated,

> We would ask the court to sentence my client to the low end of the range, the 235 months, Your Honor. The punishment is quite severe under the law. I believe that 235 months would not only serve as a deterrent to my client and to society, but it would be severe enough to satisfy any of the other sentencing factors that the court must take into account. . . . I believe, under the circumstances of my client's–the characteristics of my client and his [young] life, that the 235 months would be certainly more than adequate to punish him in this matter, Your Honor.

In sentencing Claybourne, the district court made the following statement:

> The court certainly recognizes that, under the circumstances of this case, the primary issues that would be in consideration in sentencing with regard to Mr. Claybourne would be the amount of his prior criminal activity and the fact that he's had a lot of trouble with the law over a long period, but all of that has essentially been taken into consideration by the guidelines and by the applicable law which provided a situation in this case where he was found to be an armed career criminal. Therefore, the guidelines have certainly adequately, if not more than adequately, addressed any issues that are reasonably before the court.
>
> Under the circumstances, at the lowest possible end of the range, Mr. Claybourne is facing a significant amount of time based upon that prior criminal activity. Therefore, the court finds no reason here today to set the sentence anyplace other than at the bottom of the range.

Thus, the district court sentenced Claybourne to 235 months' imprisonment.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

Arguing the "government's evidence at trial was equally strong to infer [his] innocence . . . as to infer his guilt," Claybourne contends the district court erroneously denied his motions for judgment of acquittal. Claybourne confronts "a high hurdle" when attacking the sufficiency of the evidence supporting a conviction, "as we must employ a very strict standard of review on this issue." United States v. Cook, 356 F.3d 913, 917 (8th Cir. 2004). "We must view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." Id. (citation omitted). We will reverse only if we decide no reasonable jury could have found Claybourne guilty. Id.

To convict Claybourne under 18 U.S.C. § 922(g)(1),[3] "the government had to prove beyond a reasonable doubt that (1) [Claybourne] had previously been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) [Claybourne] knowingly possessed a firearm; [and] (3) the firearm has been in or has affected interstate commerce." United States v. Maxwell, 363 F.3d 815, 818 (8th Cir. 2004). Because the parties stipulated to the first and third elements, the government had to prove only that Claybourne knowingly possessed a firearm.

The government could prove Claybourne "knowingly possessed the firearm if he had actual or constructive possession of the firearm, and possession of the firearm could have been sole or joint." United States v. Walker, 393 F.3d 842, 846-47 (8th Cir. 2005). "Constructive possession of the firearm is established if the person has

---

[3]Section 922(g)(1) makes it "unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." United States v. Boykin, 986 F.2d 270, 274 (8th Cir. 1993).

Sufficient evidence supports Claybourne's conviction. The evidence discovered inside the small bedroom singularly pointed to Claybourne as the person who exercised dominion over the bedroom where the firearm was discovered. Before the police officers even entered the residence, Officer Torruella noticed movement in the bedroom where the firearm was located. As Claybourne was the only person inside the residence, he must have been the person inside the bedroom when the police approached the residence. Claybourne's Iowa nondriver identification card and Social Security card were found in the bedroom, as was a telephone bill in Claybourne's name. Police also found another identification card for Claybourne on the very shelf where they discovered the firearm. Even Cratty's testimony revealed Claybourne exercised dominion over his small bedroom where the firearm was discovered. Cratty testified she stayed in Claybourne's room on May 26 and 27, revealing Claybourne had the authority to determine who stayed in his bedroom.

It is also critical that the firearm was concealed inside a man's shirt. Concealing the firearm inside a piece of clothing was consistent with how the $950 in cash was concealed inside a sock in the same bedroom. In addition to recognizing a pattern of concealing items, the jury also may have reasonably inferred the movement Officer Torruella saw in the bedroom was Claybourne attempting to conceal the firearm and cash.

Although criminal defendants often argue the jury should not have believed the government's witnesses, see, e.g., Cook, 356 F.3d at 917; United States v. Espino, 317 F.3d 788, 794 (8th Cir. 2003), Claybourne contends the jury erroneously failed to believe his witnesses. Claybourne argues his evidence "showed, step by step, how the gun ended up in the cupboard without [his] knowledge." Claybourne made this

argument to the jury, which rejected it. We reiterate the jury "is always the ultimate arbiter of a witness's credibility, and this Court will not disturb the jury's findings in this regard." Espino, 317 F.3d at 794. There can be no doubt the jury rejected Cratty's and Ball's convenient testimony about how the firearm found its way into Claybourne's closet. We are in no better position to judge Cratty's and Ball's credibility on their crucial testimony. The jury had sufficient circumstantial evidence upon which to convict Claybourne.

### B.    Drug-Related Evidence

Relying on Federal Rules of Evidence 403[4] and 404(b)[5], Claybourne argues "the district court's ruling permitting the admission of the evidence of drug paraphernalia constitutes an abuse of discretion because the evidence was so prejudicial that it far outweighed the probative value of the evidence and poisoned the minds of the jurors." "We review de novo the district court's interpretation and application of the rules of evidence, and review for an abuse of discretion the factual findings supporting its evidentiary ruling." United States v. Smith, 383 F.3d 700, 706 (8th Cir. 2004) (citing United States v. Blue Bird, 372 F.3d 989, 993 (8th Cir. 2004)). Giving great deference "to the district court's determination in balancing the prejudicial effect and probative value of evidence of other crimes" or acts, we will reverse the district court's evidentiary decision "only when the evidence admitted clearly has no bearing on any issue involved." United States v. White, 356 F.3d 865,

---

[4]"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

[5]"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

870 (8th Cir. 2004) (citation omitted). We also recognize "Rule 404(b) is a rule of inclusion rather than exclusion and admits evidence of other crimes or acts relevant to any issue in the trial, unless it tends to prove only criminal disposition." United States v. Simon, 767 F.2d 524, 526 (8th Cir. 1985) (citation omitted). The district court acted within its sound discretion in admitting the drug-related evidence if "(1) the evidence is relevant to an issue in question other than the defendant's character; (2) clear and convincing evidence exists that the defendant committed the prior wrongful acts; and (3) the potential unfair prejudice of the evidence does not substantially outweigh its probative value." Id.

Claybourne maintains he had no idea a firearm was in his bedroom. He then argues the drug-related evidence found in his small bedroom should be excluded as unfairly prejudicial. Similar to his contention concerning the firearm, Claybourne makes the following argument: "The mere presence of the [drug-related] items in the room where Mr. Claybourne stayed is not enough to show that he possessed them." We disagree with Claybourne's circular reasoning and conclude the district court did not err in admitting the evidence.

Given Claybourne's contention that Cratty secretly placed the firearm in Claybourne's closet next to his identification card and a scale, the jury was entitled to hear evidence depicting Claybourne's small bedroom as it existed the morning the police discovered the firearm. Claybourne argued to the jury that he had no idea a firearm was hidden inside a man's t-shirt and placed inside his closet. To counter this theory, the government presented the jury with plenty of non-drug-related evidence to convict Claybourne, as we outlined above.

The government also placed the concealed firearm in context, i.e., the firearm was discovered in the same closet with Claybourne's identification card and a hand scale, and outside the closet was a digital scale. Consistent with discovering a concealed firearm, the police also discovered a large sum of cash concealed inside a

sock. By allowing the jury to hear how the small bedroom contained a firearm along with Claybourne's personal belongings, scales, and concealed cash, the government was able to attack Claybourne's theory that he is an innocent victim who unknowingly allowed a female guest to stash a firearm in his bedroom closet. That is, the jury was allowed to consider evidence revealing Claybourne had the motive, opportunity, intent, and plan to possess a firearm to protect his drug-related items and large stash of cash. See Fed. R. Evid. 404(b) (authorizing evidence of other wrongs or acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"); United States v. Conrad, 320 F.3d 851, 857-58 (8th Cir. 2003) (holding drug paraphernalia was "admissible under Rule 404(b) as probative on the issue of motive to possess a firearm"); United States v. Fuller, 887 F.2d 144, 147 (8th Cir. 1989) (holding drug paraphernalia "was admissible under Rule 404(b) to show [the defendant]'s motive [to possess a firearm], given the close and well-known connection between firearms and drugs"); Simon, 767 F.2d at 526-27 (affirming district court's decision to admit drug-related evidence in a felon-in-possession case). The scales and large amount of concealed cash also tended to prove the presence of the firearm in Claybourne's small bedroom was no mistake or accident. Id.

If the jury had been precluded from hearing evidence of drug scales and large amounts of concealed cash, i.e., unable to see the bedroom as it existed when the firearm was discovered, Cratty's story would have been powerfully deceptive. We conclude the district court did not abuse its sound discretion in admitting evidence of the scales and large amount of cash, which countered Claybourne's theory that he had no reason to possess a firearm and a conniving Cratty set him up by secretly hiding a firearm in his small bedroom.

## C. Sentencing Issues

Conceding he "did not object at trial to his sentence on Fifth or Sixth Amendment grounds," Claybourne argues on appeal the district court violated the

Sixth Amendment by using the Guidelines to enhance Claybourne's sentence. Citing Blakely v. Washington, 124 S. Ct. 2531 (2004) (holding Washington's sentencing system unconstitutional), Claybourne contends (1) he did not consent to the application of the unconstitutional Guidelines, and (2) the district court violated the Sixth Amendment by using the Guidelines to enhance Claybourne's sentence based on a finding Claybourne's prior felony convictions for burglary and escape were crimes of violence. Claybourne asks this court to hold Claybourne's Sixth Amendment rights were violated, remand this case for resentencing, and instruct the district court to "view the Guidelines as nonbinding and advisory, and sentence Mr. Claybourne within the statutory minimum and maximum under 18 U.S.C. § 922(g)."

We no longer need to speculate whether Blakely applies to the Guidelines–it does. See United States v. Booker, 125 S. Ct. 738, 755-56 (2005). Our court has recognized Booker held "the guidelines scheme ran afoul of the Sixth Amendment insofar as the scheme provided that based on certain facts found by the sentencing judge, the judge was required to impose a more severe sentence than could have been imposed based on the facts found by the jury or admitted by the defendant." United States v. Marcussen, 403 F.3d 982, 983 (8th Cir. 2005) (citing Booker, 125 S. Ct. at 750). In addition to this Sixth Amendment holding, the Supreme Court excised two provisions of the Sentencing Reform Act of 1984, thereby effectively creating an advisory Guidelines system requiring a sentencing court "to consider Guidelines ranges," but also "permit[ting] the court to tailor the sentence in light of other statutory concerns as well." Booker, 125 S. Ct. at 756-57 (citing 18 U.S.C. § 3553(a)).

Claybourne argues the Sixth Amendment required the government to prove to a jury beyond a reasonable doubt that Claybourne's prior felony convictions for burglary and escape constituted crimes of violence such that he could be sentenced as an armed career criminal. Because armed career criminal enhancements are based upon prior convictions, both the Supreme Court and our court have rejected the

argument that juries, as opposed to sentencing judges, determine whether prior convictions constitute crimes of violence. See Booker, 125 S. Ct. at 756 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."); Marcussen, 403 F.3d at 984 (holding the district court, and not a jury, determines whether prior convictions subject a defendant to be sentenced as an armed career criminal). Thus, the district court's legal determination that Claybourne's burglary and escape convictions qualified him for armed career criminal status did not violate the Sixth Amendment.

We still must determine whether the district court's application of the Guidelines as mandatory, rather than merely advisory, entitles Claybourne to resentencing. Because Claybourne failed to lodge this objection before the district court, we review his sentence for plain error, United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc) (failure to preserve issue mandates plain-error review), which is a demanding standard not easily met, United States v. Rodriguez-Ceballos, 407 F.3d 937, 940 (8th Cir. 2005) (citing United States v. Dominguez Benitez, 542 U.S. 74, __, 124 S. Ct. 2333, 2340 (2004)).

To gain reversal of his sentence, Claybourne must satisfy the four-part, plain-error test discussed in United States v. Olano, 507 U.S. 725, 732-36 (1993). To establish plain error, Claybourne must establish "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." Johnson v. United States, 520 U.S. 461, 467 (1997) (internal quotations omitted) (alteration in original). If Claybourne establishes these three conditions, our court may exercise its discretion to remand for resentencing "if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotations omitted) (alteration in original).

The district court "committed <u>Booker</u> error by applying the Guidelines as mandatory, and the error is plain, that is, clear or obvious, at this time," in light of <u>Booker</u>. <u>Pirani</u>, 406 F.3d at 550. The critical question is whether Claybourne has established the third and fourth conditions–"whether the <u>Booker</u> error affected [Claybourne]'s 'substantial rights' in a manner that 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" <u>Id.</u> (quoting <u>Johnson</u>, 520 U.S. at 467). To satisfy the third <u>Olano</u> condition, Claybourne must establish "a 'reasonable probability' that the district court would have imposed a more favorable sentence under the advisory sentencing guidelines regime mandated by <u>Booker</u>." <u>Id.</u> at 547.

We conclude Claybourne has not met his burden to prove the district court would have imposed a more favorable sentence had it known the Guidelines were merely advisory. At sentencing, Claybourne argued he is not an armed career criminal because his convictions for burglary and escape were not crimes of violence. Claybourne did not contend he should not be sentenced as an armed career criminal even if his predicate offenses properly classify him as an armed career criminal. Thus, after the district court determined Claybourne's burglary and escape convictions constituted crimes of violence, Claybourne sought to be sentenced at the low end of the applicable Guidelines range. Acknowledging Claybourne's extensive prior criminal activity over a long period of time, the district court accepted Claybourne's sentencing argument that he be sentenced to 235 months' imprisonment–the low end of the Guidelines range. Sentencing Claybourne at the low end of the Guidelines range does not alone indicate a reasonable probability the district court would have issued a more favorable sentence under an advisory Guidelines sentencing system. <u>See id.</u> at 553 ("But sentencing at the bottom of the range is the norm for many judges, so it is insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the <u>Booker</u> error.").

-13-

The only hint the district gave that it may have sentenced Claybourne more leniently under an advisory Guidelines system occurred when the court made the following statement: "Therefore, the guidelines have certainly adequately, if not more than adequately, addressed any issues that are reasonably before the court." Because this statement has no context, the statement fails to support the relief Claybourne seeks on appeal. Given Claybourne's long criminal history, the ease with which the district court classified Claybourne as an armed career criminal, and no clear indication the district court wished to impose a more lenient sentence on Claybourne than contemplated under the Guidelines, we conclude Claybourne has not established a reasonable probability the district court would have imposed a more favorable sentence under an advisory Guidelines system. Id. (stating that, "where the effect of the [Booker] error on the result in the district court is uncertain or indeterminate–where we would have to speculate–the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error") (quoting United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir. 2005)).

## III.  CONCLUSION

For the foregoing reasons, we affirm Claybourne's conviction and sentence.

_____