# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-3726

———————

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Northern District of Iowa. |
| Muhammad Anwar, | * |
| | * |
| Appellant. | * |

———————

Submitted: September 12, 2005
Filed: November 14, 2005

———————

Before BYE, RILEY, and BENTON, Circuit Judges.

———————

RILEY, Circuit Judge.

Muhammad Anwar (Anwar) was charged with and convicted of conspiring to defraud the government by aiding and abetting others to enter into fraudulent marriages between 1993 and 2003, in violation of 18 U.S.C. § 371, and aiding and abetting a foreign national and a United States citizen in the act of entering into a fraudulent marriage for the purpose of evading immigration laws, in violation of 8 U.S.C. § 1325(c). The district court[1] sentenced Anwar to six months' imprisonment

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

and three years' supervised release. Anwar appeals, raising multiple errors. Finding no reversible errors, we affirm.

## I.    BACKGROUND

At trial, the jury heard testimony relating to Anwar's solicitation of female employees and acquaintances, from approximately 1993 to 2003, to marry Pakistani men for the purpose of allowing the men to evade United States immigration laws. Six women–specifically, Amy Gauthier (Gauthier), Mary Tucker (Tucker), Essie Cooper (Cooper), Keeley Hoyt Ali (Hoyt Ali), Sherry Ali (Ali), and Kayleen Nazir (Nazir)–testified Anwar approached them and asked if they would marry Pakistani men. The women understood the proposed marriages were not intended to be legitimate marital relationships, but instead would be "green card marriages," i.e., marriages for the purpose of helping the foreign nationals remain in the United States by evading immigration laws. With respect to Tucker, Cooper, Hoyt Ali, Ali, and Nazir, Anwar allegedly assured the women they would be taken care of financially in exchange for marrying Pakistani men.

Amy Skalsky-Akhtar (Akhtar), a United States citizen, testified Anwar asked her to marry his nephew, Tariq, who lived in Pakistan. Akhtar later married Tariq after knowing him for only five or six hours. The couple neither consummated the marriage nor lived together following the wedding. Following Akhtar's marriage to Tariq, Anwar allegedly asked Akhtar several times to begin working on Tariq's immigration paperwork. When Akhtar expressed her reluctance to do so, Anwar allegedly told her to file the paperwork and then divorce Tariq after he came to the United States.

The jury also heard testimony relating to Anwar's conduct between late 2002 and early 2003 in aiding a fraudulent marriage between Amanda Reinier (Reinier) and Hamid Bashir (Bashir). Reinier testified that in January 2003 Anwar asked her to marry Bashir, who, according to Reinier's and Bashir's marriage certificate as well

as Bashir's immigration documents, was born in Pakistan. Reinier agreed to do so. After knowing one another for less than two weeks, Reinier and Bashir married on February 13, 2003, in South Dakota, a state that has no waiting period for entering into marriage. At the time Reinier married Bashir, she had no intention of living with him as a spouse. Rather, her purpose was to allow Bashir to obtain a green card and residency in the United States. In exchange for marrying Bashir, Anwar allegedly told Reinier she would receive a truck. Anwar later made the down payment on the truck.

Following Reinier's and Bashir's wedding, Anwar allegedly began asking Reinier when she would file the necessary immigration paperwork, instructing her how to make the marriage appear legitimate by living with Bashir. Reinier ultimately signed the requisite paperwork on Bashir's behalf. After Reinier joined the military in about March 2003, Reinier realized her marriage to Bashir was wrong and wanted to end it. Anwar allegedly advised Reinier if she filed for no-fault divorce, Bashir's immigration status would not be affected. Reinier annulled the marriage in October 2003.

Gauthier, Reinier's sister, also testified regarding the Reinier and Bashir marriage. According to Gauthier, after Reinier's wedding Anwar asked her to write a letter in support of Bashir's application, allegedly telling her too many Pakistani people had submitted support letters to the Immigration and Naturalization Service (INS) and Reinier would get in trouble if Gauthier did not sign the letter. Gauthier subsequently filed the letter of support.

Over Anwar's pretrial objection, the government was allowed to present evidence concerning Anwar's romantic involvement with LeAnne Roof (Roof) and with Ali. Saqib Chudarry (Chudarry), a native of Pakistan, testified Anwar stated he had arranged marriages between various individuals, including a man named Unis Hamid (Unis) and Anwar's own girlfriend, Roof. Cheryl Stempien (Stempien),

Roof's aunt, testified she attended a wedding between a man named Unis and Roof sometime in the 1990's, even though Roof and Anwar were involved in a personal relationship both before and after the wedding. Both during and immediately after the wedding, Stempien allegedly heard Anwar promise to pay Roof $2,000 to marry Unis. Finally, Ali testified she was in a romantic relationship with Anwar between 1993 and 1999, and that during the course of their relationship, Anwar allegedly asked Ali ten to twenty times to marry various Pakistani men so the men could get green cards.

The jury returned a guilty verdict on both counts of the two-count indictment. With regard to Count 1, the jury found Anwar conspired to commit marriage fraud with five individuals: Roof, Reinier, Gauthier, Bashir, and Akhtar. Additionally, the jury found five overt acts were committed in furtherance of the conspiracy: (1) Anwar asked Akhtar to marry his nephew, Tariq, in Pakistan, and Akhtar did so after knowing Tariq for a few hours; (2) Anwar repeatedly asked Akhtar to complete the INS paperwork to allow Tariq to enter and remain in the United States; (3) Anwar knowingly and unlawfully aided and abetted the marriage of Reinier, a United States citizen, and Bashir for the purpose of allowing Bashir to remain in the United States and evade immigration laws; (4) Bashir and Reinier were married on or about February 13, 2003, for the purpose of allowing Bashir to evade immigration laws; and (5) following the marriage of Bashir and Reinier, Anwar continually directed Reinier to complete the INS paperwork to allow Bashir to evade immigration laws. With regard to Count 2, the jury found Anwar guilty of aiding and abetting the commission of marriage fraud on or about late 2002 and early 2003.

Following the verdict, the district court denied Anwar's motion for a new trial and motion for judgment of acquittal. Anwar appeals, asserting (1) insufficient evidence supported the convictions, (2) the verdict was contrary to the weight of the evidence, (3) the district court erred in admitting evidence of his romantic relationships, (4) the district court erred in admitting prejudicial Federal Rule of

Evidence 404(b) evidence of his other solicitations and failing to give a limiting instruction before final jury instructions, (5) prosecutorial misconduct deprived him of a fair trial, (6) the government's improper contact with and intimidation of a defense witness denied him the opportunity to call the witness, (7) the district court erred in refusing to give his preferred jury instruction, (8) the district court's failure to consult defense counsel before responding to a request from the jury violated his constitutional rights, and (9) cumulative trial errors warrant a new trial.

## II.  DISCUSSION
### A.  Sufficiency of the Evidence

Anwar first contends there was insufficient evidence to support the jury's findings of guilt on both counts.  "Jury verdicts are not lightly overturned."  United States v. Hood, 51 F.3d 128, 129 (8th Cir. 1995) (citation omitted).  We will reverse the jury's verdict for insufficient evidence "only if no reasonable jury could have found [Anwar] guilty beyond a reasonable doubt."  United States v. Henderson-Durand, 985 F.2d 970, 975 (8th Cir. 1993).  In doing so, we view the evidence in the light most favorable to the jury's verdict, resolving any evidentiary conflicts in the government's favor.  United States v. Lee, 356 F.3d 831, 836 (8th Cir. 2003) (citation omitted).

Under the guidance of this strict standard of review, see United States v. Galaviz-Luna, 416 F.3d 796, 799 (8th Cir. 2005), we conclude the evidence was sufficient to support Anwar's convictions.  With regard to the conspiracy charge, the jury reasonably could have concluded there was an agreement among Anwar, male Pakistani foreign nationals, and female United States citizens to enter into fraudulent marriages to evade immigration laws.  As evidence of Anwar's intent to evade immigration laws, Anwar solicited several women to enter into "green card marriages" with various Pakistani men for the purpose of helping the men remain in the United States, and assured the women they would be taken care of financially in exchange for marrying the foreign nationals.  Furthermore, ample evidence supports

the jury's finding Anwar conspired with Akhtar, Roof, Reinier, Bashir, and Gauthier. The government presented evidence concerning (1) Anwar's solicitation of Akhtar, Roof, and Reinier to marry Pakistani men for the purpose of helping the men obtain residency in the United States; (2) Akhtar's marriage to Anwar's nephew, Tariq, in Pakistan after knowing Tariq for only five to six hours; (3) Reinier's marriage to Bashir for the purpose of allowing Bashir to remain in the United States and evade immigration laws; (4) Anwar's repeated requests to Akhtar and Reinier to submit the requisite immigration paperwork for their new husbands; and (5) Gauthier's letter in support of Bashir's immigration paperwork, filed pursuant to Anwar's request.

We reach the same conclusion with regard to Anwar's conviction for marriage fraud. Again, sufficient evidence supports the jury's verdict on the charge of aiding and abetting the commission of marriage fraud between Reinier and Bashir: (1) Anwar asked Reinier to marry Bashir, and Reinier agreed to do so; (2) at the time of the marriage, Reinier had no intention of living with Bashir as a spouse; (3) Reinier's purpose in marrying Bashir was to allow him to obtain a green card and United States residency; (4) Anwar inquired when Reinier would file Bashir's immigration paperwork, and instructed her how to make the marriage appear legitimate; and (5) Anwar advised Reinier that Bashir's immigration status would not be affected if she filed for no-fault divorce. Thus, we find no basis for disturbing the jury's verdict.

### B. Verdict Against the Weight of the Evidence

Anwar next argues the jury's verdict was contrary to the weight of the evidence, thus warranting a new trial. In determining whether to grant a motion for a new trial on the ground the verdict is contrary to the weight of the evidence, "[t]he district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." United States v. Walker, 393 F.3d 842, 847 (8th Cir. 2005) (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)). If, after doing so, the

court determines "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." Id. at 847-48. The district court's denial of Anwar's motion for a new trial based on the weight of the evidence will be affirmed "absent a 'clear and manifest abuse of discretion.'" United States v. Frank, 354 F.3d 910, 916 (8th Cir. 2004) (quoting United States v. Jiminez-Perez, 238 F.3d 970, 974 (8th Cir. 2001)).

Our review of the record leads us to conclude the district court did not abuse its discretion in denying Anwar's motion for a new trial. Simply put, Anwar's convictions "do[] not evince a serious miscarriage of justice such that we must reject the jury's verdict or the district court's sense of justice." Walker, 393 F.3d at 848.

### C. Alleged Trial Errors
#### 1. Admission of Anwar's Relationships

Anwar contends the district court erred in admitting evidence regarding his personal relationships with Roof and Ali, arguing the evidence should have been excluded under Federal Rules of Evidence 403 and 404(b). "We review de novo the district court's interpretation and application of the rules of evidence, and review for an abuse of discretion the factual findings supporting its evidentiary ruling." United States v. Claybourne, 415 F.3d 790, 797 (8th Cir. 2005) (citation omitted).

We conclude the district court did not err in admitting such evidence. Contrary to Anwar's argument, evidence of his romantic associations with Roof and Ali was admitted not under Rule 404(b), but rather "as substantive evidence of the conspiracy to commit marriage fraud." Specifically, the district court found the evidence was "relevant to the issue of whether [Roof's and Ali's] marriages to other Pakistani men were fraudulent." We are not persuaded by Anwar's contention there "was no evidence that having the alleged extra-marital affair meant that Anwar would not want his paramour to enter into a true marriage." Anwar told Chudarry he had

arranged marriages between Unis and Anwar's girlfriend, Roof. According to Stempien, Anwar promised to pay Roof $2,000 to marry Unis and was in a romantic relationship with Roof both before and after her wedding to Unis. Furthermore, while intimately involved with Ali from 1993 to 1999, Anwar asked Ali approximately ten to twenty times to marry different Pakistani men. Such evidence certainly is relevant and makes it more likely than not the women's marriages or proposed marriages to other Pakistani men were not for a legitimate purpose.

Additionally, we agree with the district court's determination "the relevance of Roof's and Ali's relationships with [Anwar] [was] not substantially outweighed by the danger of unfair prejudice." Unfair prejudice "means an undue tendency to suggest decision on an improper basis." United States v. Adams, 401 F.3d 886, 899-900 (8th Cir. 2005) (citation omitted). However, evidence of Anwar's personal involvement with Roof and Ali does not appear to be "so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial." Id. at 900 (citation omitted). Accordingly, we find no error on this issue.

### 2. Admission of Anwar's Solicitations of Fraudulent Marriages Under Rule 404(b)

Anwar next assigns as error the admission of evidence concerning his solicitations of Tucker, Hoyt Ali, Cooper, Ali, Gauthier, and Nazir to marry foreign nationals for the purpose of evading immigration laws. The district court initially admitted the testimony as substantive evidence of the conspiracy, yet noted if the court had erred in its ruling, the testimony also was admissible under Rule 404(b). Anwar argued the evidence was inadmissible, and, even if admissible, he was entitled to a Rule 404(b) cautionary instruction before each woman's testimony. His request was denied. At the close of the evidence, however, the district court held the evidence was admissible only under Rule 404(b) for the purpose of showing Anwar's intent to commit the offenses charged, and instructed the jury in this regard during

final jury instructions. On appeal, Anwar reasserts his previous objections to this evidence.

"Giving great deference to the district court's determination in balancing the prejudicial effect and probative value of evidence of other crimes or acts, we will reverse the district court's evidentiary decision only when the evidence admitted clearly has no bearing on any issue involved." Claybourne, 415 F.3d at 797 (internal quotation omitted). The district court acted within its discretion in admitting evidence of Anwar's solicitations of other fraudulent marriages if (1) the evidence is relevant to an issue other than Anwar's character, (2) it is similar in kind and not overly remote to the crime charged, (3) it is supported by sufficient evidence, and (4) the potential unfair prejudice of the evidence does not substantially outweigh its probative value. United States v. Jackson, 278 F.3d 769, 771 (8th Cir. 2002) (citing United States v. Green, 151 F.3d 1111, 1113 (8th Cir. 1998)).

Again, Anwar's claim of error fails. First, Anwar's prior acts of solicitation of American women to marry Pakistani men so the men could enter or remain in the United States are relevant to Anwar's intent to commit the charged conduct. Second, his prior bad acts are similar in kind to the crimes charged. Anwar was charged with conspiring to commit marriage fraud and aiding and abetting the commission of marriage fraud. His prior acts involved asking women to marry foreign nationals so the men could remain in the United States and evade immigration laws, and assuring the women they would be taken care of financially for entering into such a marriage. Also, the acts–occurring between 1993 and 2003–are not overly remote, given Anwar was charged with engaging in a marriage fraud conspiracy between 1993 and November 2003. While "proximity in time is a factor in deciding whether to admit Rule 404(b) evidence, we have held that 'there is no fixed period within which the prior acts must have occurred.'" Jackson, 278 F.3d at 772 (quoting United States v. Baker, 82 F.3d 273, 276 (8th Cir. 1996)). Third, there is sufficient evidence the alleged acts occurred. The district court found the testimony of the six women was

credible, thus satisfying the government's burden to establish the alleged acts' occurrences by clear and convincing evidence. See United States v. Callaway, 938 F.2d 907, 910 (8th Cir. 1991) (citation omitted). Fourth, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Evidence of Anwar's prior bad acts was probative of his intent to commit the charged conduct and was not so "inflammatory" as to "divert the jury's attention from the material issues." Adams, 401 F.3d at 900. After carefully reviewing the record and giving great deference to the district court's determination, we conclude the district court acted within its discretion in admitting evidence of Anwar's prior acts under Rule 404(b). See Claybourne, 415 F.3d at 797.

We also find Anwar was not prejudiced by the district court's failure to give a limiting instruction before each woman's testimony. Generally, a limiting instruction should be given to inform the jury of the narrow purpose for which evidence of other acts is admitted. See United States v. Perkins, 94 F.3d 429, 434 (8th Cir. 1996). Once the district court determined the evidence was admissible solely under Rule 404(b), the jury was instructed it could consider the evidence only on the issue of Anwar's intent. During oral argument, Anwar asserted he was prejudiced by the jury's inability to analyze each witness at the time of her testimony under the guidance of a limiting instruction. While we recognize the logic of Anwar's contention, we believe any potential prejudice was cured by the district court's inclusion of a limiting instruction on the proper use of the evidence during final jury instructions. "Exactly when to so instruct [the jury] is surely a matter within the district court's broad discretion, and we respectfully decline to micro-manage how that discretion should be exercised." Id. at 436.

## D. Alleged Government Misconduct

This court employs a two-part test to analyze whether reversible prosecutorial misconduct exists: (1) whether the prosecutor's conduct was improper, and (2) whether such conduct prejudicially affected the defendant's substantial rights so

as to deprive the defendant of a fair trial. United States v. Conrad, 320 F.3d 851, 855 (8th Cir. 2003). The prejudicial effect of prosecutorial misconduct is determined by "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court." Id. (quoting United States v. Hernandez, 779 F.2d 456, 460 (8th Cir. 1985)). A district court's denial of a defendant's motion for mistrial based on alleged prosecutorial misconduct is reviewed for an abuse of discretion. United States v. Beeks, 224 F.3d 741, 745 (8th Cir. 2000).

### 1. Failure to Disclose Chudarry's Testimony

During the prosecution's interview of Chudarry the evening before trial, Chudarry stated Anwar had made a $3,000 payment on his behalf while Chudarry was in custody on immigration-related charges. However, during direct examination, Chudarry said, after speaking to the government during the pre-trial interview, he had spoken to his girlfriend and realized someone other than Anwar made the $3,000 payment. Anwar moved for a mistrial, claiming the government's failure to disclose the exculpatory information was a violation of Brady,[2] Federal Rule of Criminal Procedure 16(c),[3] and the parties' stipulated discovery order requiring the production

---

[2]The rule set forth in Brady v. Maryland, 373 U.S. 83 (1963), requires the government to disclose any evidence that is both favorable to the accused and material either to guilt or punishment. United States v. Gonzales, 90 F.3d 1363, 1368 (8th Cir. 1996).

[3]Rule 16(c) requires a party who discovers additional evidence before or during trial to disclose its existence to the other party or the court if: "(1) the evidence or material is subject to discovery or inspection under th[e] rule; and (2) the other party previously requested, or the court ordered, its production." Fed. R. Crim. P. 16(c).

of Jencks Act[4] information.  Finding no <u>Brady</u> violation or government misconduct, the district court denied the motion.

We conclude the district court did not abuse its discretion in denying the motion.  First, there was no <u>Brady</u> violation, given Chudarry's testimony was not exculpatory and was disclosed during trial.  <u>See</u> <u>Gonzales</u>, 90 F.3d at 1368.  Second, there was no Rule 16(c) violation.  Anwar fails to demonstrate why Chudarry's testimony was subject to discovery or whether its production was ordered or requested.  Third, since no written statement of Chudarry's interview was created, no violation of the Jencks Act occurred.  A review of Chudarry's testimony does not resemble an effort by the prosecution to "waft an unwarranted innuendo into the jury box," <u>see</u> <u>Beeks</u>, 224 F.3d at 746 (citation omitted), but rather an attempt to clarify the witness's testimony on what essentially turned out to be irrelevant evidence.  Furthermore, even if the prosecution's conduct was improper, such conduct did not prejudicially affect Anwar's substantial rights so as to deprive him of a fair trial.

### 2.    Failure to Disclose Gauthier's Informal Immunity

After Gauthier's testimony but before the prosecution rested its case, the prosecution informed defense counsel Gauthier had been granted informal immunity for signing an affidavit of support for her sister's fraudulent marriage.  Following the district court's denial of Anwar's motion for a mistrial, a stipulation regarding Gauthier's immunity was read to the jury and also was included in the final jury instructions.  Anwar contends the prosecution's failure to inform defense counsel of Gauthier's immunity before her testimony constitutes reversible prosecutorial misconduct.

---

[4]The Jencks Act, 18 U.S.C. § 3500, requires, upon motion by the defendant, the production of any written statements made by a government witness after the witness has testified on direct examination.

-12-

Although the government concedes it was obligated to inform defense counsel of Gauthier's immunity from prosecution, Anwar fails to demonstrate how this error "prejudicially affected [his] substantial rights." Conrad, 320 F.3d at 855. While Anwar was unable to cross-examine Gauthier regarding her immunity, the curative actions taken by the court–evidenced by the stipulation and the reference to Gauthier's immunity during the final jury instructions–as well as the strength of other properly admitted evidence of Anwar's guilt, support the conclusion the district court did not abuse its discretion in denying Anwar's motion for a mistrial based on prosecutorial misconduct.

### 3. Government's Alleged Intimidation of Erin Sabir

Anwar further contends he was deprived of his Sixth Amendment right to call a witness on his behalf due to the government's alleged intimidation of Erin Sabir (Sabir). During trial, a hearing was held on whether law enforcement officers intimidated and threatened Sabir while serving a trial subpoena on her at her home. According to Sabir, the officers threatened to prosecute her for perjury if she testified on Anwar's behalf and stated her children would be taken away from her and she would go to jail if she lied. Although the officers admitted mentioning the consequences for testifying falsely, they denied threatening or intimidating Sabir with the mention of jail or the loss of her children in connection with a perjury charge. Finding the officers' conduct did not prevent Anwar from calling Sabir to testify on his behalf, the district court denied Anwar's motion for a new trial.

After reviewing the district court's determination for an abuse of discretion, see Beeks, 224 F.3d at 745, we find none. "[W]arnings concerning the dangers of perjury cannot be emphasized to the point where they threaten and intimidate the witness into refusing to testify." United States v. Risken, 788 F.2d 1361, 1370 (8th Cir. 1986) (quoting United States v. Blackwell, 694 F.2d 1325, 1334 (D.C. Cir. 1982)). However, warnings by government agents to prospective witnesses regarding the consequences for testifying falsely are not improper *per se*. Id. In denying Anwar's

-13-

motion, the district court noted (1) Sabir never stated she would refuse to testify if asked; (2) the officers' comments concerning the consequences of perjury did not intimidate Sabir into refusing to testify; (3) Sabir was present at the courthouse along with other potential defense witnesses during trial; and (4) Sabir was available to testify during trial, but was not called by the defense. While we recognize the government "should exercise considerable restraint when advising potential witnesses about the consequences of committing perjury," id. at 1371, we cannot say the district court abused its discretion in concluding Anwar was not prevented from calling Sabir to testify on his behalf.

### E.    Jury Questions
#### 1.    Anwar's Requested Jury Instruction

During jury deliberations, the district court received a note from the jury asking two questions, one of which read, "Instruction #20 On Statements 1-4 (acts) do we need to find the defendant guilty of all 4 or just 1 of the 4." After conferring with both parties, the district court's written response to the jury's questions stated, "I received your note, a copy of which is attached. The answers to your questions are contained in Instruction Number 20 as well as all the other instructions. Please reread the instructions and continue to deliberate." Both parties agreed with the court's instruction, although Anwar's counsel stated his preferred response would be "yes."

Anwar now argues the district court's refusal to give his suggested answer to the jury's question constituted an abuse of discretion. See United States v. Scout, 112 F.3d 955, 960 (8th Cir. 1997) (standard of review is abuse of discretion). We disagree. The district court's response–to which both parties agreed–adequately answered the jury's question. A thorough reading of Instruction Number 20 indicates the answer to the jury's question was contained therein. Furthermore, as the district court correctly noted, the jury's question was incapable of being answered in a "yes" or "no" fashion. Anwar's suggested response might have resulted in nothing but

-14-

confusion. Thus, we conclude the district court did not abuse its discretion by refusing to give Anwar's preferred response.

## 2. Jury's Request for Transcripts

During the jury's deliberations, the district court received a note from the jury requesting transcripts of the testimony of Gauthier and Reinier. Without consulting the parties, the district court responded in writing, reminding the jury, as it had in the court's preliminary instructions, no transcripts of witness testimony were available. The district court informed the parties of the note when the parties reconvened to receive the verdict, and stated it had felt it was not necessary to confer with the parties before answering the jury's question. Anwar contends his Fifth and Sixth Amendment rights as well as his right under Rule 43(a) of the Federal Rules of Criminal Procedure to be present at every stage of his criminal proceeding were violated when the district court responded to the jury's request without alerting or conferring with the parties about the proper response.

Under the guarantees of Rule 43(a), jury questions should be answered in open court, and defense counsel should be given an opportunity to be heard before the court responds. Rogers v. United States, 422 U.S. 35, 39 (1975). However, in some cases, a violation of Rule 43(a) may be harmless error. Id. at 40. "[C]ommunications between judge and jury in the absence of the defendant and his counsel are improper and presumptively prejudicial. This presumption may be overcome, however, by a clear indication of an absence of prejudice." United States v. Koskela, 86 F.3d 122, 125 (8th Cir. 1996).

We conclude any potential violation of Rule 43(a) and Anwar's constitutional rights in this case amounts to no more than harmless error. During preliminary jury instructions, the district court informed the jury transcripts would not be available, and during final jury instructions, the jury was reminded this instruction remained in effect. Furthermore, the "decision to read testimony requested by the jury rests within

-15-

the sound discretion of the trial judge." <u>United States v. Varsalona</u>, 710 F.2d 418, 420 (8th Cir. 1983) (citations omitted). The district court's decision, which reiterated its previous instructions to the jury, more than likely would not have changed following a conference with the parties. We agree with the district court that, even if a violation of Rule 43(a) occurred, such error was harmless. Therefore, the district court's denial of Anwar's motion for a new trial on this basis was not an abuse of discretion.

### F.  Cumulative Trial Errors

Finally, Anwar contends a new trial is warranted based on the cumulative effect of the alleged errors. "We may reverse where the case as a whole presents an image of unfairness that has resulted in the deprivation of a defendant's constitutional rights, even though none of the claimed errors is itself sufficient to require reversal." <u>United States v. Riddle</u>, 193 F.3d 995, 998 (8th Cir. 1999); <u>see</u>, <u>e.g.</u>, <u>United States v. Walrath</u>, 324 F.3d 966, 971 (8th Cir. 2003). This court will not reverse based upon the cumulative effect of errors unless there is substantial prejudice to the defendant. <u>United States v. Gladfelter</u>, 168 F.3d 1078, 1083 (8th Cir. 1999). After reviewing the record, we reject Anwar's argument. "The cumulative effect, if any, of the claimed errors was not such as to deny [Anwar] a fair trial." <u>United States v. Steffen</u>, 641 F.2d 591, 598 (8th Cir. 1981). Accordingly, we affirm the district court's decision.

### III.  CONCLUSION

For the foregoing reasons, we affirm Anwar's convictions and sentence.

_____