# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-4110

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Larry L. Henderson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 15, 2005
Filed: March 1, 2006 **(Corrected 3/7/06)**

_____

Before SMITH, HEANEY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury found Larry Lee Henderson guilty of 20 counts of passing counterfeit checks, and the district court[1] sentenced him to 63 months of imprisonment. Henderson appeals his conviction and sentence. This court affirms.

_____

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

I.

Henderson argues there was insufficient evidence to support the jury's verdict. In evaluating sufficiency, this court views the evidence most favorably to the Government, including all reasonable inferences from the evidence. *See United States v. Drews*, 877 F.2d 10, 13 (8th Cir. 1989). This court reverses "only if the jury must have had a reasonable doubt about an essential element of the crime." *United States v. McDougal*, 137 F.3d 547, 553 (8th Cir. 1998).

Henderson was charged with uttering and possessing counterfeited securities, in violation of 18 U.S.C. § 513(a). The Government had to prove that Henderson, with the intent to deceive another person or organization, uttered or possessed a counterfeit security of an organization that operates in or affects interstate commerce. *Id.*

The evidence supports the jury's verdict. Over a dozen victims testified that Henderson physically handed counterfeit checks to them. This directly establishes 14 of the 20 counts.

The six counts not supported by such victim testimony were Counts 2, 5, 6, 8, 9, and 16. Count 2 involves a $150,000 check purportedly issued by Union Planters Bank, payable to Henderson. At trial, a teller testified that a female presented the check and a deposit ticket to her. According to a latent-fingerprint analyst, the ticket bore Henderson's fingerprint.

Count 16 concerns an $800 check purportedly drawn on the account of Two State Electrical, Inc., payable to Henderson. At trial, the president of Two State Electrical testified that he mailed a check payable to his accountant. He later

discovered that the check was cashed, with the payee's name changed to "Larry Henderson." A U.S. Postal Inspector confirmed that the accountant's post office box was near a box rented by Henderson.

The remaining counts, 5, 6, 8, and 9, allege bad checks that victims received from the organization Henderson oversaw. The victims in Counts 5, 6, and 9 testified that the bad checks were written to pay for work done for Henderson and the organization. With respect to Count 8, Henderson admitted he forwarded the check. This evidence, combined with reasonable inferences from other evidence at trial, supports the jury's verdict.

## II.

Henderson argues that he is entitled to a new trial because the Government failed to disclose information regarding the organizational victims in this case, as required by Federal Rule of Criminal Procedure 12.4(a)(2):

> If an organization is a victim of the alleged criminal activity, the government must file a statement identifying the victim. If the organizational victim is a corporation, the statement must also disclose the information required by Rule 12.4(a)(1) [*i.e.*, the identity of any parent corporation and any publicly held corporation owning at least 10% of the victim's stock, or that there is no such corporation,] to the extent it can be obtained through due diligence.

The statement must be filed "upon the defendant's initial appearance." Fed. R. Crim. P. 12.4(b) (2002).

The Government admits not filing the disclosure statement for the organizational victims. Henderson acknowledges that, because he did not object to

-3-

this failure, the standard of review is plain error. *United States v. Olano*, 507 U.S. 725, 731-732 (1993). Henderson is thus entitled to relief only if he shows that the plain error affected his substantial rights, and seriously affected the fairness, integrity or public reputation of the judicial proceedings. *Id.* at 732.

Henderson complains that "it is impossible to prove an unknown" and that he "cannot ascertain the effect of the prejudice because it simply cannot be known what the implications of filing of the compliance would have disclosed." However, "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id.* at 734. Henderson has not met that burden. He points to no evidence that the Government's failure to file the disclosure statement affected his substantial rights.[2] Indeed, the district judge had notice of the organizational victims even without the disclosure statement, because they were identified in the Superceding Indictment. Accordingly, there is no reversible error.

## III.

The Government sought to present evidence that Henderson had been convicted of bank fraud (for writing bad checks) and that his supervised release was twice revoked for writing bad checks. The district court admitted the evidence over Henderson's objection that it was cumulative and prejudicial. Henderson now argues that he is entitled to a new trial.

---

[2]Henderson argues that he does not have to demonstrate prejudice to his substantial rights, claiming the failure to file the disclosure statement is a structural error. However, the Supreme Court has not recognized nondisclosure as a structural error. *See Arizona v. Fulminante*, 499 U.S. 279, 309-310 (1991); *see also Neder v. United States*, 527 U.S. 1, 8 (1999) (listing the "very limited class of cases" in which structural error has been found).

The district court acts within its discretion in admitting evidence of a prior conviction if (1) the evidence is relevant to an issue other than the defendant's character; (2) it is similar in kind and not overly remote to the crime charged; (3) it is supported by sufficient evidence; and (4) the potential unfair prejudice of the evidence does not substantially outweigh its probative value. *United States v. Anwar*, 428 F.3d 1102, 1111 (8th Cir. 2005).

Those criteria are met here. The prior convictions for writing bad checks, as well as the supervised release violations for bad checks, are similar to the offenses at issue and relevant to Henderson's knowledge in passing counterfeit checks. The prior convictions and violations of supervised release are supported by sufficient evidence, namely Henderson's admissions in the plea agreement. Finally, the potential of unfair prejudice is outweighed by the evidence's probative value. The court instructed the jury to consider the evidence only to determine knowledge, intent, opportunity, and absence of mistake.

Henderson also argues that the district court erred in admitting evidence that he was convicted of felony child neglect. Even if the court abused its discretion in admitting the evidence, Henderson is not entitled to a new trial because he has not shown that the verdict would have been different if the evidence were excluded. *See United States v. Velazquez-Rivera*, 366 F.3d 661, 666 (8th Cir. 2004) ("Even if the district court erred in admitting the evidence, we will not reverse if the admission of the evidence was harmless"); Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded"). As discussed, the Government presented ample proof of the charged counts.

## IV.

The Government sought to introduce two audio recordings of telephone conversations between victim Georgia Monica and a male identifying himself as "Steven Anderson," but whom the Government contended was Henderson. The district court admitted the evidence over Henderson's objection that it was cumulative and prejudicial.

A proper foundation for the introduction of tape-recorded evidence requires that "the recording device was capable of taking the conversation now offered in evidence." *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974). Henderson argues that the device was "not capable of receiving a two-party conversation" over the telephone because it was designed for hand-held dictation. This argument has no support in the record. "The very fact that the tape recordings exist establishes that the recording device was capable of picking up sounds and taking the conversation offered." *United States v. McCowan*, 706 F.2d 863, 865 (8th Cir. 1983).

Henderson also asserts that the tapes include only part of the conversation, allowing unnecessary jury speculation. However, Henderson has not even attempted to explain how the incompleteness of the tapes could lead a jury to draw conclusions adverse to him.

Finally, Henderson contends that the evidence on the tapes was cumulative to Monica's testimony under Federal Rule of Evidence 403. The tapes were not cumulative. Hearing the tapes allowed the jury to compare the recorded voice of "Steve Anderson" with the voice of Henderson, who testified at trial. Accordingly, the tapes were uniquely probative. No abuse of discretion occurred.

## V.

Henderson claims that the court erred in instructing the jury that it could find him guilty even if it found that he only aided and abetted the crimes charged. According to Henderson, the Government introduced this theory of guilt at the eleventh hour, and the Government throughout trial treated him as a principal.

This court finds no error in the district court's instruction, which closely tracks Eighth Circuit Model Instruction 5.01. The Government at trial did not introduce a new charge against Henderson, just an additional theory of guilt. Because Henderson attempted in his testimony to implicate other individuals for the charged crimes, the instruction was warranted. In each count, the Superceding Indictment cites 18 U.S.C. § 2, which states: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

## VI.

Finally, Henderson argues that the district court erred in sentencing him under a mandatory guidelines scheme, requiring a resentencing. Henderson is correct that the district court erred in applying the guidelines as mandatory. *United States v. Booker*, 543 U.S. 220 (2005). Because Henderson preserved his argument in the district court, this court reviews for harmless error. *United States v. Haidley*, 400 F.3d 642, 644 (8th Cir. 2005). This court has held that mandatory application of the guidelines is harmless error when the district court had the discretion to impose a lesser sentence but instead sentenced the defendant in the middle of the sentencing range. *United States v. Sutherlin*, 424 F.3d 726, 728 (8th Cir. 2005). Here, the district court sentenced Henderson to 63 months of imprisonment—the top of the

guideline range—and made comments adverse to Henderson.  The Government met its burden of showing harmless error.

VII.

Henderson's conviction and sentence are affirmed.

_____