# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1295

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Harold Lindsey Webster, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: September 24, 2010
Filed: November 5, 2010

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Harold Webster appeals his conviction for one count of conspiracy to distribute at least fifty grams of cocaine base in violation of 21 U.S.C. §§ 841(b)(1)(a) and 846, for which he was sentenced to 240 months' imprisonment. Webster first contends the district court[1] erred in denying his motion to suppress because there was no probable cause for his arrest and all evidence obtained from the arrest and subsequent search was unlawfully seized as a result. Webster also argues the court erred in denying his

_____

[1]The Honorable Robert W. Pratt, Chief Judge, United States District Court for the Southern District of Iowa.

motion to dismiss because his due process rights were violated when state officials destroyed evidence in the case while it was still pending in federal court. We affirm.

I

On October 28, 2005, Harold Webster was arrested after a third controlled purchase of crack cocaine was arranged involving a confidential informant. Prior to the date of the arrest, Officer Steve Walters of the Mid-Iowa Narcotics Enforcement Task Force utilized an informant in making two successful purchases of 3.5 grams of crack cocaine from Webster. However, in each of the prior purchases, occurring on October 6, 2005, and October 20, 2005, Walters was unable to positively identify Webster as the seller of the narcotics. At the time, the informant believed the person he purchased the drugs from was "Harold Smith."

On the date of the arrest, Walters arranged a third meeting between Webster and the informant in a parking area near a Family Dollar store in Des Moines, Iowa, at 10:30 a.m. Contrary to the first two transactions, Walters did not provide the informant with purchase money; instead, he instructed the informant to first determine if Webster had the drugs in his possession. If the informant observed crack cocaine, he was instructed to tell Webster he had to retrieve money from someone inside the store, and to start walking toward the store. Conversely, if the informant did not see drugs, he was told not to walk toward the store.

Webster arrived shortly before the purchase and parked on the street facing the wrong direction. He was driving in a red or maroon Ford pickup truck, with a female present in the passenger seat. The informant was equipped with a concealed audio device in order for Walters to remotely listen to the transaction, but the device was inaudible when the informant approached Webster. After observing the informant approach the truck, engage in conversation with Webster, and walk away from the vehicle toward the store, the officers moved in and surrounded Webster with patrol

cars.  Webster put his truck in reverse and rammed into the police SUV behind him in an unsuccessful bid to escape.  Shortly thereafter, the officers apprehended Webster and discovered a handful of crack cocaine in the process.

According to Webster, there is a dispute concerning the basis of his arrest.  In a preliminary hearing, Webster's attorney filed an affidavit stating he spoke with an arresting officer, and the officer indicated Webster was arrested for parking the wrong way on the street.  However, Walters testified that Webster was arrested based on information provided by the informant, not because of Webster's parking.

Following the arrest, the officers performed a warrantless search of Webster's truck.  They discovered seventeen plastic bags with a total weight of 62.5 grams of crack cocaine, as well as two other bags with 110 grams of marijuana and miscellaneous paraphernalia.  The informant, who knew Webster as "Harold Smith," confirmed it was the same person he bought crack cocaine from in the two previous controlled buys.  Webster was given his Miranda rights and admitted his involvement in dealing controlled substances.  The officers then obtained a search warrant for two residences related to Webster, where they later discovered additional quantities of controlled substances.

Webster was initially charged in Iowa for the drug offenses, and the drug evidence was analyzed by the Iowa Division of Criminal Investigation Criminalistics Laboratory.  A report from the lab detailed the results of the analysis, including the quantities and makeup of all controlled substances seized by the officers.  In December 2005, the state offenses against Webster were dismissed pursuant to the federal indictment.  Daniel Davis, the lead agent for the federal prosecution, informed Walters, who continued on the case as the local case agent, that Webster had been indicted in federal court.  However, this fact was never communicated to the evidence custodian of the Des Moines Police Department, and thus the department's records listed Webster's case as "closed."  The Polk County Attorney's Office confirmed that

Webster's case was closed, according to their records. As a result, after securing an order from a state court judge, the Des Moines Police Department destroyed Webster's evidence along with evidence from hundreds of other cases in a semi-annual purging process. The evidence custodian later testified that the department was dependent on Walters, as the case agent, to notify the department that the case had been transferred to the federal system.

In federal court, Webster was initially charged in a one-count indictment with possession with intent to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(a), but he was later charged in a superseding indictment with an additional count of conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841(b)(1)(a) and 846. On June 13, 2008, Webster pleaded guilty to the conspiracy count, and he was later sentenced by the district court to 240 months' imprisonment. Webster now appeals.

II

A. Whether Probable Cause Existed for the Warrantless Arrest and Search

Webster first contends the district court erred in denying his motion to suppress because there was no probable cause for his arrest or the subsequent search of his vehicle, and all evidence obtained from the arrest and the search was unlawfully seized as a result. We review legal determinations in the denial of a motion to suppress de novo and the underlying factual determinations for clear error. United States v. Nguyen, 608 F.3d 368, 374 (8th Cir. 2010).

1. The Warrantless Arrest of Webster

"Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person

to believe that the suspect has committed or is committing a crime." United States v. Parish, 606 F.3d 480, 486 (8th Cir. 2010). In making this determination, "[l]aw enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances." United States v. Henderson, 613 F.3d 1177, 1181 (8th Cir. 2010) (internal quotation marks and citation omitted). "Because probable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, the police need not have amassed enough evidence to justify a conviction prior to making a warrantless arrest." United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005) (citation omitted); see also United States v. Jones, 535 F.3d 886, 890 (8th Cir. 2008).

The district court held, under the circumstances, the officers had "ample reason" to believe Webster was involved in criminal activity when they effectuated his arrest. The court noted the officers had observed the informant make two previous controlled buys from Webster, known to the informant as "Harold Smith," and they had tested and confirmed drugs were sold in those transactions. In the transaction leading to the arrest, the court recognized, Webster and the informant arranged to meet at the Family Dollar store, and the informant used the agreed-upon signal of walking toward the store to indicate the officers should make the arrest. The court held the informant was sufficiently reliable for the officers to establish probable cause because of the two previously observed and confirmed drug buys, as well as the details of the third transaction being effectuated as the informant said it would.

On appeal, Webster concedes the officers had enough information to conduct an investigatory stop pursuant to Terry v. Ohio, 392 U.S. 1 (1968), but he argues there was not reliable information, i.e., probable cause, to arrest him. Webster first emphasizes the informant believed he was buying drugs from "Harold Smith," a different person. He also notes differences between the controlled purchases that occurred on October 6, October 20, and October 28, the date Webster was arrested. For instance, the vehicles driven by Webster varied between the three transactions –

a burgundy Cadillac was used during the October 6 transaction, a black Isuzu SUV was driven during the October 20 transaction, and a red or maroon Ford truck was driven during the October 28 transaction.

Webster also challenges the reliability of the informant's information, arguing Walters did not have confirmation or independent corroboration from any reliable source as to Webster having drugs in the vehicle. Moreover, Webster contends Walters did not observe any drugs being transacted, i.e., any criminal activity. Instead, Webster argues, all the officers had to indicate drugs were in the truck was the visual signal of the informant walking away from the vehicle.

Finally, Webster challenges the basis for the arrest, as his attorney stated in an affidavit one of the arresting officers indicated Webster was arrested for being parked the wrong way on the street. Under these circumstances, Webster claims the officers did not have probable cause for his arrest, and he argues for the suppression of all fruits of the illegal arrest, including his statements and all evidence found thereafter.

Upon careful review, we conclude the officers had probable cause to arrest Webster. First, the fact the officers may not have "known" Webster has been rejected by this court as a reason to invalidate probable cause. United States v. Williams, 616 F.3d 760, 765 (8th Cir. 2010) ("Probable cause does not require certainty regarding [a defendant's] identity.") (citing United States v. Muhammad, 604 F.3d 1022, 1027-28 (8th Cir. 2010)). Thus, Webster's allegations regarding Walters' inability to positively identify Webster prior to the arrest are of no effect.

Second, the officers were justified in relying on the informant in their probable cause determination. See United States v. Morrison, 594 F.3d 626, 632 (8th Cir. 2010) (holding an informant who has provided reliable information in the past may suffice to support a probable cause determination). "Information from a confidential informant is reliable if the informant has a history of supplying reliable information

or if the information provided by the informant is independently corroborated." United States v. Neal, 528 F.3d 1069, 1073 (8th Cir. 2008). Here, the informant had a history of supplying reliable information in the past because he had successfully completed two prior controlled buys with Webster within the prior month. See id. ("[T]he confidential informant . . . had successfully completed one controlled buy from [the defendant]."); United States v. Brown, 49 F.3d 1346, 1349 (8th Cir. 1995) ("An informant may establish the reliability of his information by establishing a track record of providing accurate information.") (citing Illinois v. Gates, 462 U.S. 213, 233 (1983)). Additionally, Webster arrived at the predetermined place and time for the controlled buy, as agreed upon with the informant. See United States v. Rodriguez, 414 F.3d 837, 843 (8th Cir. 2005) (concluding probable cause was established, in part, by the defendant's arrival at the right time and place as scheduled by the informant). The fact Webster's conduct in arriving at the Family Dollar store involved "innocent" behavior does not diminish the value of the informant's information; rather, it increases the probability the informant was also correct regarding Webster's criminal behavior. Brown, 49 F.3d at 1349 (holding the informant's prediction that the defendant would arrive at a KFC restaurant increased the probability that other aspects of the information concerning criminal activity were also correct). Under these circumstances, the information provided by the informant was sufficiently reliable to support a finding of probable cause.

Finally, even though the officers may not have witnessed actual criminal activity between the informant and Webster, there was a "probability or substantial chance of criminal activity," which we have held is sufficient to support a probable cause determination. United States v. Jones, 535 F.3d 886, 890 (8th Cir. 2008). After two prior controlled buys, Webster arrived at the scheduled place and time for a third controlled purchase, he discussed the deal with the informant, and the informant provided the visual signal of walking toward the Family Dollar store to indicate to the officers that Webster possessed crack cocaine. These circumstances are sufficient for

a finding of probable cause, and thus we reject Webster's claim that the warrantless arrest was invalid.

## 2. The Warrantless Search Following the Arrest

We next address Webster's challenge to the warrantless search of his truck based on Arizona v. Gant, 129 S. Ct. 1710 (2009), which was decided after the district court ruled on Webster's motion to suppress. The district court held that, because the officers had probable cause to arrest Webster, they also had the right to search his person incident to the arrest for officer safety. Contemporaneous with that arrest, and in line with our prior case law, the district court also held the officers could search the passenger compartment of Webster's vehicle. See United States v. Poggemiller, 375 F.3d 686, 687 (8th Cir. 2004) ("Under [New York v. Belton, 453 U.S. 454 (1981)], when a police officer makes a lawful custodial arrest of an automobile's occupant, the Fourth Amendment allows the officer to search the vehicle passenger compartment as a contemporaneous incident of arrest.").

In Gant, the Supreme Court held that officers "may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 129 S. Ct. at 1723. Pursuant to Gant, Webster argues there was no need to protect the arresting officers or safeguard any evidence Webster might conceal or destroy because he had already been arrested, handcuffed, and moved away from the truck at the time of the search.

We have previously distinguished cases similar to the instant matter in which defendants were arrested for drug offenses from Gant, where the defendant was arrested for driving with a suspended license, because the former situation provides a reasonable basis for officers to believe the vehicle contains evidence of the crime of arrest, whereas in Gant, there was no evidence of the offense of driving with a

suspended license which would have been found in the vehicle. See Williams, 616 F.3d at 766 ("In short, these officers had probable cause to believe that contraband or other evidence of drug crimes would be found in the stopped vehicle."). As a result, while the first prong of Gant clearly makes a search incident to arrest inapplicable in this case because Webster was handcuffed and not within reaching distance of the passenger compartment, the second prong may still apply because the officers had reason to believe the vehicle contained evidence of the offense of arrest. Indeed, Webster was arrested after being removed from his vehicle at the time and place set for a controlled drug purchase, as discussed above. See Parish, 606 F.3d at 487 ("Because the only purpose of the arranged meeting was for [the defendant] to distribute drugs, the police had probable cause to believe that evidence relevant to the drug crime would be found in the vehicle.").

However, the record evinces a dispute regarding the nature of Webster's arrest, which impacts whether the officers had reason to believe the vehicle contained "evidence of the *offense of arrest*." Gant, 129 S. Ct. at 1723 (emphasis added). Webster submitted an affidavit through his lawyer stating one of the arresting officers indicated Webster was arrested for parking the wrong way on the street. The district court concluded the affidavit did "nothing to alter the fact that a controlled drug buy operation was the primary basis for the arrest and searches in this case," although it concluded the fact Webster was parked the wrong way on the street was, on its own, a basis for effectuating a traffic stop.

We note the district court's order was issued prior to Gant, and thus there was little reason for the court to distinguish among the possible bases for arrest, as either would have provided a sufficient justification for a search incident to arrest at the time. While we now have the benefit of Gant, we find it unnecessary to resolve the factual dispute regarding the basis for arrest in light of the alternative grounds discussed by the court. In addition to the search incident to arrest exception, the court invoked the automobile exception, reasoning that once the officers found drugs on

Webster's person, they had probable cause to search the entirety of the truck without a warrant. We agree. Warrantless searches need only be justified by one exception to the Fourth Amendment warrant requirement; one of these exceptions is the automobile exception, which "authorizes a search of any area of the vehicle in which the evidence might be found" if probable cause exists. United States v. Grooms, 602 F.3d 939, 942-43 (8th Cir. 2010). We conclude the officers maintained probable cause to search Webster's vehicle because he arrived in the vehicle at the time and place set for a controlled drug buy and he spoke with an informant in the vehicle before the informant gave a visual signal to officers indicating Webster had drugs in his possession. These facts, combined with the drugs found on Webster's person incident to arrest and his act of ramming the patrol car, provided the officers with a reasonable basis to believe to a fair probability as to contraband existing in the automobile. As a result, the warrantless search was justified under the automobile exception, irrespective of the applicability of the search incident to arrest exception. See id. at 942 ("[B]ecause we conclude the search of [the defendant's] vehicle was supported by probable cause, it is no longer necessary to justify the warrantless nature of the search as one incident to arrest; rather the warrantless search can be justified under the automobile exception."). In light of our determination the officers had probable cause to arrest Webster and search his vehicle, we conclude the subsequent search warrant issued for Webster's residences was also valid and the evidence discovered under those searches need not be suppressed as fruit of the poisonous tree. Thus, we affirm the district court's denial of Webster's motion to suppress.

B. Whether the Charges Should Be Dismissed Based on Destroyed Evidence

Webster next contends the district court erred in denying his motion to dismiss the indictment because his due process rights were violated when state officials destroyed evidence while the case was still pending. The district court's denial of a motion to dismiss the indictment because of the destruction of evidence is reviewed de novo. United States v. Williams, 577 F.3d 878, 882 (8th Cir. 2009).

The Supreme Court has held that "unless a defendant can show bad faith on the part of police, failure to preserve potentially useful evidence does not constitute denial of due process of law." United States v. Scoggins, 992 F.2d 164, 167 (8th Cir. 1993) (citing Arizona v. Youngblood, 488 U.S. 51 (1988)). Moreover, the evidence must have had apparent exculpatory value and comparable exculpatory evidence must not have been reasonably available to the defendant. United States v. Malbrough, 922 F.2d 458, 463 (8th Cir. 1990) (citing California v. Trombetta, 467 U.S. 479, 488-89 (1984)). We have previously held state authorities did not act in bad faith when they destroyed evidence pursuant to a court order. Scoggins, 992 F.2d at 167 (citing Malbrough, 922 F.2d at 463).

The destruction of evidence in this case occurred pursuant to the Des Moines Police Department's procedure of destroying evidence on a bi-annual basis. Each officer is given a printout of their "locker," or evidence related to the cases in which they are involved, in order to verify whether the evidence can be destroyed. After receiving verification from the officers, the evidence custodian examines the records of the Polk County Attorney's Office to assess the current disposition of the cases.

In Webster's case, Walters, as the local case agent, failed to place a notice of transfer in the case file or inform the evidence custodian, Officer Kelley Evans, that Webster had been indicted in federal court. The records in the Polk County Attorney's Office showed Webster's state case was closed. Accordingly, Evans sent the entire packet of evidence to the Attorney's Office to be reviewed by attorneys in the drug and gang unit, who rely on the same internal records as those reviewed by Evans to assess whether a case is still open. Evans subsequently received an order from a state district court judge directing the evidence be destroyed, and he destroyed all the evidence referenced in the order, including the evidence in Webster's case and hundreds of other cases. Prior to its destruction, the evidence was sent to the Iowa Division of Criminal Investigation Criminalistics Laboratory for official analysis. A

report from the lab detailed the results from the analysis, including the quantity and makeup of the drugs.

The district court determined the normal procedure in destroying evidence was followed, despite Walters's accidental oversight regarding the status of Webster's federal case. It held there was no evidence of bad faith on Walters's part, and while the procedure could possibly be improved to enhance communication between state and federal agents, it concluded the lack of bad faith was dispositive to Webster's claim. Moreover, the court stated the destroyed drug evidence did not have exculpatory value to Webster, and the government still bore the burden of proving the existence and quantity of the drugs at trial.

On appeal, Webster concedes the state had a policy in place to track evidence, but he asserts it was recklessly ignored. He argues a showing of recklessness, rather than a showing of bad faith, is enough to meet his burden. Webster contends the district court mischaracterized Walters's oversight as accidental or negligent because Walters knew the case was in federal court and he was tasked with putting a notice in the file to preserve the evidence. To this end, Webster describes Walters's eight years of experience, as well as Walters's personal involvement with this case as the arresting officer and the person to whom Webster made inculpatory statements. Given these circumstances, Webster asserts Walters's reckless actions constituted a due process violation.

Webster also places blame on the Polk County Attorney's Office, particularly Dan Voogt, the prosecutor in Webster's state case, and Robert DiBlasi, an Assistant County Attorney. Webster argues these individuals signed off on the destruction of Webster's evidence, despite knowing of the pending federal case. Moreover, Webster asserts the evidence had exculpatory value because he was not able to independently test the crack cocaine to determine its quantity and purity. He contends he should not be required to blindly accept the government's test results.

As an initial matter, we reject Webster's invitation to impose a lesser standard of culpability on the part of the government in this case. The Supreme Court has "stressed the importance for constitutional purposes of good or bad faith on the part of the Government when the claim is based on loss of evidence attributable to the Government." Youngblood, 488 U.S. at 57. In light of Youngblood, we have required a showing of bad faith to sustain a due process claim based on the failure to preserve evidence. Scoggins, 992 F.2d at 167. Moreover, we have stressed that the burden of demonstrating bad faith on the part of the government resides with the defendant. Id.; Youngblood, 488 U.S. at 58.

Under Youngblood, we agree with the district court there is no evidence of bad faith on the part of the individuals involved which would constitute a due process violation. At most, the record shows Walters acted negligently in failing to notify Evans of the federal indictment, which is not enough for Webster to demonstrate a due process violation. See United States v. Iron Eyes, 367 F.3d 781, 786 (8th Cir. 2004) ("[T]he record in this case shows that, at most, the police acted negligently in allowing [the evidence to be destroyed]; there was no evidence of bad faith."). Webster's argument the district court mischaracterized Walters's conduct is unavailing because Webster maintained the burden to show bad faith on the part of the state officials, and he failed to present any evidence in the record tending to show anything more than mere negligence. Instead, the record shows the evidence was destroyed along with evidence from hundreds of other cases during a bi-annual standard procedure, and was signed off on by a state court judge.

We are also unpersuaded by Webster's argument the destroyed evidence would have been exculpatory. First, we agree with the district court that the presentation of the crack cocaine itself at trial would tend to be more inculpatory than exculpatory. While there remains a small possibility that further testing of the drugs by Webster would have revealed errors in the government's lab analysis, the Supreme Court has rejected similar arguments as a basis for demonstrating the exculpatory value of

destroyed evidence.  See Trombetta, 467 U.S. at 489 ("Although the preservation of breath samples might conceivably have contributed to respondents' defenses, a dispassionate review of the Intoxilyzer and the California testing procedures can only lead one to conclude that the chances are extremely low that preserved samples would have been exculpatory.").

Webster attempts to distinguish his case from Trombetta based on the possibility of life imprisonment he potentially faced if his case proceeded to trial, whereas the defendants in Trombetta confronted far less severe penalties pursuant to their charges for driving while intoxicated.  Such discrepancy is of no consequence to our inquiry of whether the government exhibited bad faith in destroying evidence and whether the evidence was exculpatory to the defendant.  In other words, our focus remains on whether the defendant's constitutional due process rights have been violated by the government's conduct, irrespective of the ultimate sentence a defendant receives.  See id. at 488 (discussing whether California's policy of not preserving breath samples is with or without constitutional defect).

Finally, Webster asserts the destruction of evidence denied him his Sixth Amendment right to have the jury determine the facts of his case.  He suggests the jury would have been deprived of the ability to assess the true type, purity, and quantity of drugs involved in his offense. We disagree.  The government at all times retained its burden to prove the elements of the offense and the drug quantity attributable to Webster, even if the destruction of the evidence presented further challenges to the government in achieving such purpose. Webster was free at trial to cross-examine the government's witnesses to that effect, calling into play the government's conduct in destroying the evidence.  See Williams, 577 F.3d at 882 (noting the defendant's argument that the condition of a firearm destroyed before trial was material to his guilt was rebutted by the fact the defendant could cross-examine the government's expert regarding the firearm's condition).  In addition, we have rejected similar claims from defendants who have asserted an inability to test the

destroyed evidence due, in part, to the ability of the defendant to cross-examine the government's witnesses.  Id. at 883; see also Trombetta, 467 U.S. at 490 ("[T]he defendant retains the right to cross-examine the law enforcement officer who administered the Intoxilyzer test, and to attempt to raise doubts in the mind of the factfinder whether the test was properly administered.").  Under these circumstances, we affirm the district court's denial of Webster's motion to dismiss.

III

For the foregoing reasons, we affirm Webster's conviction.

_____