# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2026

_____

United States of America

*Plaintiff - Appellee*

v.

Brandon Reeves Tyerman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: October 19, 2012
Filed: December 12, 2012 (Corrected July 10, 2013)

_____

Before LOKEN, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Brandon Reeves Tyerman was convicted of being a felon in possession of ammunition and a firearm, and being a felon in possession of a stolen firearm. He appeals, alleging that the district court[1] improperly admitted evidence, refused a jury

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

instruction, and denied motions for a new trial based on improper testimony and cumulative error. He also attacks the sufficiency of the evidence at trial. At sentencing, the district court applied an enhancement for obstruction of justice, which Tyerman challenges. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In June 2008, Tyerman was charged in Iowa state court with stalking, going armed with intent, and burglary of a vehicle. During the plea negotiations, locating the firearm was a top priority for the state district attorney. Tyerman disclosed its location to his attorney, Peter Berger. Police proceeded to recover the firearm from Timothy Yasunaga's house (Tyerman had stayed with Yasunaga a few times).

In June 2009, a federal grand jury charged Tyerman on four counts. The district court severed the first two counts. This appeal concerns the remaining two counts: felon in possession of a firearm and ammunition, and possession of a stolen firearm. *See* **18 U.S.C. § 922(g)(1)**; **18 U.S.C. § 922(j)**. Tyerman moved to suppress the firearm, which the district court denied. In October 2009, Tyerman pled guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). He later attempted to withdraw the plea. The district court denied his request, sentencing him to 50 months' imprisonment. This court reversed and remanded the case. ***United States v. Tyerman***, 641 F.3d 936, 944 (2011). While the appeal was pending before this court, the Bureau of Alcohol, Tobacco, and Firearms mistakenly destroyed the firearm in question. ATF is to destroy firearms only after the final disposition of a case.

On remand, Tyerman withdrew his plea. Before trial, Tyerman objected to prior acts the government intended to introduce. In December 2007, he threatened to kill his wife and her family after she said she was filing for divorce. She filed for divorce in March 2008. In April, Tyerman wrapped a telephone cord around her neck, and threatened to end both of their lives. The next day, she obtained a protective and

no-contact order. Tyerman violated this order several times with phone calls and text messages. Tyerman was found hiding in a trailer on his in-laws' property – where his wife was staying. He had also installed a GPS tracking device on her car. On June 4-5, Tyerman tried to drive his truck across a soybean field on his in-laws' property. The truck became stuck. (Over Tyerman's objection, the district court permitted this prior-acts evidence.) Inside the truck, police found a Barretta gun case, an empty magazine, and ammunition. Those items are the basis of the charges in this case.

In October 2011 a jury convicted Tyerman on both counts. At sentencing, a U.S. Marshal testified that prison guards discovered two homemade handcuff keys in Tyerman's cell. According to the Marshal, during the investigation, other inmates revealed Tyerman's plans to escape from jail and his use of the law library (which lacked surveillance) to practice removing handcuffs. Finding the Marshal credible, the district court applied a two-level adjustment for obstruction of justice based on the attempted escape, sentencing Tyerman to 72 months' imprisonment.

II.

Tyerman contends that the district court erred in denying his motion to suppress the firearm. He argues that attorney Berger's disclosure of the firearm's location violated the attorney-client privilege, and his Fifth and Sixth Amendment rights. The district court's denial of a motion to suppress is reviewed, as to factual findings, for clear error, and as to legal conclusions, de novo. *United States v. Anderson*, 688 F.3d 339, 343 (8th Cir. 2012).

A.

Ineffective-assistance-of-counsel claims under the Sixth Amendment present mixed questions of law and fact and are reviewed de novo. *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005). Tyerman contends that Berger was ineffective because disclosing the firearm's location violated the attorney-client privilege. The

government counters that Tyerman implicitly waived the privilege because he disclosed the firearm's location in plea negotiations.

A claim for ineffective assistance of counsel has two elements: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

To establish a Sixth Amendment claim based on violation of the attorney-client privilege, this court requires the defendant to prove "that the government knowingly intruded into the attorney-client relationship." *United States v. Singer*, 785 F.2d 228, 234 (8th Cir. 1986). Tyerman admits that the government did not knowingly intrude and only passively received the information. While he argues that the Fourth, Seventh, and Ninth circuits have left open whether deliberate intrusion is required, this court has not. *Id.*

Further, the attorney-client privilege can be waived, either explicitly or implicitly. *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998). The parties agree that there was no explicit waiver. During plea negotiations, however, Tyerman disclosed the gun's location to Berger. Berger then relayed the gun's location to the district attorney. As the state bond-review hearing indicates, Tyerman was aware that his disclosure was communicated to the district attorney:

> BERGER: At the Court's request, and the County Attorney's request, you worked with me and Tim [Yasunaga] to have the gun, which everybody was worried about in the case, located in the house where you were staying, correct?
>
> TYERMAN: Yes.

-4-

BERGER: And that's where you were staying, at Tim's house, correct?

TYERMAN: Yes.

Because Tyerman's disclosure to Berger came during plea negotiations, he implicitly authorized Berger to share the information with the district attorney. He thus implicitly waived the attorney-client privilege as to the communications about the gun's location.[2] This waiver, in addition to his admission of no deliberate government intrusion, demonstrates that his Sixth Amendment rights were not violated.

## B.

Tyerman, assuming that the attorney-client privilege was breached, argues that his Fifth Amendment rights were violated by a fundamentally unfair trial. Due process claims are reviewed de novo. *United States v. Summage*, 575 F.3d 864, 872 (8th Cir. 2009). To constitute a due process violation, the government's conduct must be truly outrageous and "shock the conscience of the court." *United States v. Hunt*, 171 F.3d 1192, 1195 (8th Cir. 1999), *quoting United States v. Pardue*, 983 F.2d 835, 847 (8th Cir. 1993). Tyerman demonstrates no government misconduct at all, thus there is no Fifth Amendment violation.[3]

---

[2]The Iowa Court of Appeals similarly found that the attorney-client privilege was not breached. *Tyerman v. State*, No. 11-1694, 2012 WL 4900211, at *5 (Iowa Ct. App. Oct. 17, 2012).

[3]Assuming the privilege was breached, the Iowa Court of Appeals also concluded that Tyerman's due process rights were not violated. *Tyerman*, 2012 WL 4900211, at *8.

III.

Both parties agree that ATF's destruction of the firearm was improper. As a result, Tyerman attempted to dismiss the case, introduce evidence of the firearm's destruction, and include a spoliation jury instruction. The district court declined all three invitations.

A.

This court reviews de novo the denial of a motion to dismiss for destruction of evidence. *United States v. Webster*, 625 F.3d 439, 446 (8th Cir. 2010). A due process violation arises from destruction of evidence when the evidence "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). A higher standard of proof applies, however, when the evidence is only potentially useful to the defendant. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

The firearm in this case was only potentially useful to Tyerman. This court recently decided a similar case about the destruction of cocaine evidence. *Webster*, 625 F.3d at 440-41. When the defendant's case was transferred from state to federal authorities, a state employee failed to place a notice of transfer in the file. *Id.* at 442. The case thus displayed as "closed" and the cocaine was destroyed during a semi-annual, scheduled evidence destruction. *Id.* Before the destruction, the drugs were tested for quantity and composition, and the test results remained in the record. *Id.* at 446. This court found, therefore, that having the actual drugs in the courtroom would have been more *inculpatory* than exculpatory. *Id.* at 447-48. Similarly here, fingerprint testing of the firearm was completed prior to destruction. Tyerman's

fingerprints were not on the weapon – a fact introduced into evidence. Having the firearm in the courtroom would have been more inculpatory than exculpatory. Tyerman argues that he was unable to adequately cross-examine the eyewitness about the gun's physical characteristics. Several photographs of the gun were available, however, and nothing prevented Tyerman from using a replica during cross-examination.

At most, the firearm was potentially useful to Tyerman. Therefore, he must demonstrate that the government acted in bad faith by destroying evidence. *See Youngblood*, 488 U.S. at 58. Tyerman argues that a reckless destruction equates to bad faith. This court rejects that argument. *Webster*, 625 F.3d at 447 ("As an initial matter, we reject Webster's invitation to impose a lesser standard of culpability on the part of the government in this case."). Here, the ATF agent destroyed the firearm mistakenly, but not in bad faith. The district court did not err by denying Tyerman's motion to dismiss for destruction of evidence.

B.

Tyerman asserts that the district court erred by denying him the ability to present evidence about the firearm's destruction. This court reviews evidentiary rulings for abuse of discretion. *United States v. Beasley*, 688 F.3d 523, 533 (8th Cir. 2012). The actual weapon is not needed to sustain a felon-in-possession conviction – even eyewitness testimony will suffice. *United States v. Dobbs*, 449 F.3d 904, 910-11 (8th Cir. 2006). Even so, because the weapon was destroyed, the fingerprint expert, the detective, and the owner Yasunaga could not match the photograph of the weapon to the actual weapon. Tyerman claims prejudice by that lack of testimony, and that he should therefore be able to present evidence of the weapon's destruction.

Tyerman was not prejudiced by the inability of the three individuals to match the photograph to the actual weapon. First, the fingerprint evidence was beneficial to him because none of the fingerprints on the weapon were his. The expert's inability

to match the photograph to the weapon was not prejudicial to Tyerman. Second, the detective testified that he norm ally did not go back and m atch photographs to firearms. Third, one of the photographs displayed the firearm's serial num ber. Yasunaga matched that serial number to his ATF documentation from purchasing the firearm. Therefore, there was no need for Yasunaga to match the photograph to the actual weapon.

The district court did not abuse its discretion in prohibiting Tyerm an from presenting evidence about the firearm's destruction.

## C.

At the trial's conclusion, Tyerman requested a spoliation instruction,[4] which the district court denied. This court reviews the denial of a proposed jury instruction for abuse of discretion and reverses only if the instruction's omission was prejudicial. *United States v. Espinoza*, 684 F.3d 766, 783 (8th Cir. 2012).

This court has not applied the spolia tion doctrine in a criminal case. *United States v. Davis*, 690 F.3d 912, 925 (8th Cir. 2012). Even if this court were to do so, a showing of the governm ent's bad faith would be required. *Id.*, *citing Stepnes v. Ritschel*, 663 F.3d 952, 965 (8th Cir. 2011). Tyerman argues that this court has left open the possibility of a spoliation instruction absent a showing of bad faith. But this

---

[4]Tyerman offered the following instruction:

Evidence has been presented the Government has intentionally destroyed evidence, specifically, a 9m m Beretta handgun, m odel 92FS, serial number BER056350; an ammunition magazine for the handgun; and a case for the handgun. If you find that this evidence existed and the Government knowingly and intentionally destroyed this evidence, you may but are not required to conclude that this evidence would have been adverse or unfavorable to the Government and supportive or favorable to Mr. Tyerman.

court certainly rejected a spoliation instruction on the basis of mere negligence. *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746-47 (8th Cir. 2004). Here, the district court found, correctly, that the ATF was only negligent in destroying the firearm. The district court's denial of Tyerman's proposed spoliation instruction was not an abuse of discretion.

Moreover, the party requesting a spoliation instruction must demonstrate prejudice. *Espinoza*, 684 F.3d at 783. As discussed, the firearm was more inculpatory than exculpatory, and Tyerman was not prejudiced by its destruction.[5]

IV.

Tyerman argues that the district court erred by admitting the prior-acts evidence of the events leading up to the charges. The district court ruled that the acts were admissible both as intrinsic evidence and pursuant to Federal Rule of Evidence 404(b). This court reviews the district court's evidentiary rulings for abuse of discretion.

---

[5]On appeal, Tyerman takes issue with the given instruction's language that the firearm "no longer exists." He did not, however, object to that specific language in the district court. While he continued to argue for his spoliation instruction, he did not object to the "no longer exists" language. Because there was no objection, review of this instruction is for plain error. *United States v. Vanover*, 630 F.3d 1108, 1119 (8th Cir. 2011) (per curiam). Reversal is only appropriate where there is (1) error; (2) that is clear or obvious; (3) affects the substantial rights of the defendant; (4) and seriously affects the fairness, outcome or reputation of judicial proceedings. *Id.*, *quoting United States v. Marcus*, ___ U.S. ___, 130 S. Ct. 2159, 2164 (2010). This instruction was not error because the jury instructions, taken as a whole, fairly and adequately submitted the issues to the jury. *United States v. Garcia-Gonon*, 433 F.3d 587, 591 (8th Cir. 2006). The instruction twice references the fact that the allegations are only alleged, and the instruction correctly states the law. Moreover, to prove prejudice, the defendant must establish a reasonable probability that but for the alleged error, the result of the trial would have been different. *Vanover*, 630 F.3d at 1119. Here, that is not the case because Tyerman stated to the jury in closing, on at least four occasions, that the weapon no longer existed.

*United States v. Street*, 548 F.3d 618, 624 (8th Cir. 2008). Rule 404(b) rulings are reversed "only when such evidence cl early had no bearing on the case and was introduced solely to prove the defendant 's propensity to commi t criminal acts." *United States v. Aldridge*, 664 F.3d 705, 713 (8th Cir. 2011), *quoting United States v. Henderson*, 613 F.3d 1177, 1182 (8th Cir. 2010).

Intrinsic evidence is evidence that "'completes the story' or provides a 'total picture' of the charged crime." *United States v. Johnson*, 463 F.3d 803, 808 (8th Cir. 2006), *citing United States v. Forcelle*, 86 F.3d 838, 842 (8th Cir. 1996). The prior-acts evidence helps tell the story of why Tyerman's truck ended up in a field with the ammunition in it. At least some p rior acts are necessary to connect the field to Tyerman's wife and to explain why he was even in the area. Further, the government's case relied on constructive possession. The prior acts helped establish that the gun case and ammunition in Tyerman's truck were in fact his.

Alternatively, as the district court ruled, this evidence is adm issible under Federal Rule of Evidence 404(b). Prior-act evidence "may be admissible for another purpose [other than propensity] , such as proving m otive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." **Fed. R. Evid. 404(b)(2)**. Here, the evidence demons trates motive and intent. To be admissible under 404(b), evidence must be (1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect. *Aldridge*, 664 F.3d at 713.

As to the first factor, Tyerman argues th at motive and intent are irrelevant in this felon-in-possession case because all the government must prove is that he is a felon who possessed a firearm . This ar gument, however, ignores this court's precedent that 404(b) evidence may establish motive and intent in felon-in-possession cases. *See, e.g.*, *United States v. Claybourne*, 415 F.3d 790, 797 (8th Cir. 2005); *United States v. Conrad*, 320 F.3d 851, 857-58 (8th Cir. 2003); *United States v.*

-10-

*Fuller*, 887 F.2d 144, 147 (8th Cir. 1989).  The evidence also helps establish knowing possession of the firearm and ammunition.

Second, Tyerman believes that the prior acts are different than, and too remote from, the felon-in-possession crime.  The similar-in-kind requirement is less important when the evidence is used to establish motive (as compared to knowledge or the other categories in 404(b)).  *United States v. Farish*, 535 F.3d 815, 820 n.1 (8th Cir. 2008) (allowing domestic-abuse evidence to prove motive for arson).  Additionally, all of the acts in evidence occurred within six months of the charged crime – certainly not too remote for 404(b) evidence.  *See* *United States v. Strong*, 415 F.3d 902, 905-06 (8th Cir. 2005) (describing the general reluctance to admit events occurring more than thirteen years before the crime charged, but nonetheless admitting events occurring sixteen years before the crime).

Third, the allegations of prior acts must be supported by sufficient evidence. *Aldridge*, 664 F.3d at 713.  The district court found they were (which Tyerman does not challenge).

Finally, Tyerman contends that the evidence is more prejudicial than probative because it tends to show only that he is a bad person who commits crimes.  Damaging evidence is always prejudicial; the question is whether the evidence is *unfairly* prejudicial.  *See* **Fed. R. Evid. 403**.  At oral argument, the government made the paradoxical argument that the evidence is not unfairly prejudicial because the case against Tyerman was overwhelming, yet it claims the prior-acts evidence was necessary for the jury.  While the government cannot have it both ways, the district court did hear Tyerman's full argument why the evidence is prejudicial.  This court gives great deference to the district court's weighing of the probative value of evidence against its prejudicial effect.  *Claybourne*, 415 F.3d at 797.  The district court did not abuse its discretion by admitting the prior-acts evidence.

Tyerman moved for a mistrial and a new trial based on improper testimony. The district court denied the motion. This court reviews for abuse of discretion. ***United States v. Garrett***, 648 F.3d 618, 624 (8th Cir. 2011). "The district court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record." ***Id.***, *quoting **United States v. Nelson***, 984 F.2d 894, 897 (8th Cir. 1993).

While incarcerated before trial, Tyerman made incriminating statements to another inmate, including comments that he wanted to hire someone to kill his wife. The district court permitted the inmate to testify, but prohibited testimony about any murder-for-hire. Tyerman asserts that two specific exchanges justify a mistrial or a new trial.

First, at the beginning of cross-examination, Tyerman's counsel asked the inmate about the color of the prison jumpsuit he was wearing:

> Q: What's the orange for?
> A: I think it has to do with my charge.
> Q: What does that mean?
> A: A weapon.
> Q: So if you're wearing orange, it means that you might be violent?
> A: It's the same one that Brandon [Tyerman] had on.
>
> Ms. Luxa [Government Attorney]: Objection, Your Honor.
> The Court: Sustained.

Tyerman argues that this testimony should result in a mistrial because it showed only a propensity for violence. However, after the objection, Tyerman's attorney attempted to use this statement to impeach the inmate, asking if he had "an ax to grind" with Tyerman. Further, as the district court correctly ruled, the only fact the jury learned

from the testimony is that Tyerman is charged with a weapons-related crime – a fact it was already well aware.

Second, during cross-examination, Tyerman's counsel asked about the inmate's wife and children:

> Q:   So I would imagine that you would have some incentive to want to get out and spend some time outside of prison.
> A:   I think anyone would.
> Q:   Okay. That would be pretty important to you?
> A:   An incentive?
> Q:   Yes. That would be pretty important to you?
> A:   My incent— Are you talking about my incentive for cooperation with the Government? My initial thing was I went to my attorney because of what he had asked me to do.
>
> Ms. Luxa [Government Attorney]:    Objection, Your Honor.
> Mr. Parrish [Defendant's Attorney]:   Objection and mistrial, Judge.
> The Court:   Okay. If that's a motion, it's overruled.

Tyerman argues that "what he had asked me to do" referred to the murder-for-hire, and should result in a mistrial. The government believes that the reference to "he" refers to the inmate's attorney, not Tyerman. Both readings are plausible, but in any event, such a vague, brief reference did not prejudice Tyerman. Without any context, a reasonable juror could not surmise that "what he had asked me to do" is referencing a murder-for-hire plot.

"Motions for new trials are generally disfavored and will be granted only where a serious miscarriage of justice may have occurred." *United States v. Fetters*, 698 F.3d 653, 656 (8th Cir. 2012), *quoting United States v. Rice*, 449 F.3d 887, 893 (8th Cir. 2006). Tyerman was not prejudiced by either exchange. The district court did not abuse its discretion by denying his motions for mistrial and a new trial.

## VI.

Tyerman claims that the evidence at trial is insufficient to support the verdict. This court reviews de novo the district court's denial of a motion for acquittal based on insufficiency of the evidence. *United States v. Burrage*, 687 F.3d 1015, 1023 (8th Cir. 2012).

> On review, evidence is viewed most favorably to the verdict, giving it the benefit of all reasonable inferences. Reversal is appropriate only where no reasonable jury could find all the elements beyond a reasonable doubt. This court does not weigh the credibility of the witnesses or the evidence. The jury has the sole responsibility to resolve conflicts or contradictions in testimony, and credibility determinations are resolved in favor of the verdict.

*Id.*, *quoting United States v. Aldridge*, 664 F.3d 705, 715 (8th Cir. 2011).

Tyerman challenges his felon-in-possession conviction, emphasizing inconsistent testimony, witnesses' inaccuracies, and witness credibility. None of Tyerman's assertions amount to any more than credibility attacks. "The jury's credibility determinations are virtually unassailable on appeal." *United States v. Van Nguyen*, 602 F.3d 886, 901 (8th Cir. 2010) (internal quotation marks omitted). The jury heard all of the testimony, and this court will not disturb their reasonable judgment as to the credibility of the witnesses.

Tyerman also challenges his conviction for possession of a stolen firearm by arguing that he did not intend to permanently deprive Yasunaga of the firearm, therefore it was not stolen. While intent to permanently deprive is an element of common-law larceny, the term "stolen" is not necessarily limited to that definition in federal criminal statutes. *See United States v. Turley*, 352 U.S. 407, 411 (1957). This court previously evaluated the "stolen" aspect of a stolen firearm under the sentencing

guidelines, determining that all wrongful takings satisfy the inquiry – regardless of whether the taking meets the definition of common-law larceny. ***United States v. Bates***, 584 F.3d 1105, 1109 (8th Cir 2009); *accord **United States v. Walters***, 269 F.3d 1207, 1218 (10th Cir. 2001); ***United States v. Jackson***, 401 F.3d 747, 749-50 (6th Cir. 2005). When evaluating the meaning of "stolen," the Supreme Court requires that the term be analyzed in the context in which it appears. *Turley*, 352 U.S. at 413. In *Bates*, this court relied on a Third Circuit opinion in holding that the sentencing guidelines required a broad meaning of "stolen" for firearm charges. ***Bates***, 584 F.3d at 1109, *citing **United States v. Mobley***, 956 F.2d 450, 454 (3d Cir. 1992). In *Mobley*, the court analyzed the crimes that specific guideline was adopted to punish: violations of the Gun Control Act. ***Mobley***, 956 F.2d at 453-54. Specifically, and critically, the analysis included the two statutes violated here: 18 U.S.C. § 922(g) and (j). ***Id.*** The court found that these crimes, in conjunction with the sentencing guidelines, created a regulatory scheme, whereby Congress intended to restrict the trade of stolen firearms. ***Id.*** at 454. Section 922(g) and (j) are closely intertwined with the sentencing guidelines concerning stolen firearms. This court's determination that all wrongful takings (regardless of common-law larceny) constitute "stolen" applies equally to § 922(g) and (j).

Tyerman contends that *United States v. McBane*, 433 F.3d 344, 348 (3d Cir. 2005), establishes that the common-law definition of larceny is needed for a stolen-firearm conviction. In *McBane*, however, the court did not directly address the appropriate standard. Rather, it applied the common definition of larceny to the facts of the case. The issue of the relevant standard was not before the court in *McBane*. *See **McBane***, 433 F.3d at 348.

The evidence of Tyerman taking Yasunaga's firearm and then hiding it in the duct work of Yasunaga's house is sufficient to sustain the conviction. The district court did not err by denying the motion for acquittal based on insufficiency of the evidence.

-15-

## VII.

Tyerman asserts that the district court erred by denying his motion for a new trial based on the cumulative effect of the alleged errors. This court reviews the denial of a motion for a new trial for abuse of discretion. *United States v. Samples*, 456 F.3d 875, 880 (8th Cir. 2006). When individual errors are insufficient on their own to justify reversal, the cumulative effect requires reversal only if they deprive the defendant of constitutional rights. *United States v. Riddle*, 193 F.3d 995, 998 (8th Cir. 1999). None of the alleged errors, however, were errors. The district court did not abuse its discretion by denying Tyerman's motion for a new trial.

## VIII.

Tyerman says that the district court erred by applying a sentencing enhancement for obstruction of justice due to an attempted escape. This court reviews the application of sentencing guidelines de novo, and the factual findings for clear error. *United States v. Waller*, 689 F.3d 947, 957 (8th Cir. 2012) (per curiam).

Tyerman argues that there was no attempt because he did not take a substantial step toward an escape. "Attempt requires an intent to commit the predicate offense and conduct that is a substantial step towards the crime's commission." *United States v. Shinn*, 681 F.3d 924, 931 (8th Cir. 2012). The Marshal's testimony satisfies the intent requirement, because Tyerman disclosed to other inmates his plan to escape. The remaining question is whether Tyerman took a substantial step toward the commission of an escape. "A defendant takes a 'substantial step' when he takes actions 'necessary to the consummation of the crime that were of such a nature that a reasonable observer, viewing the actions in context could conclude that the actions were undertaken in accordance with a design to commit the actual offense.'" *Id.*, *quoting United States v. Young*, 613 F.3d 735, 743 (8th Cir. 2010). A reasonable

observer would view the creation of handcuff keys (and practice using them) as "in accordance with a design" to escape.

The district court did not err by applying a two-level adjustment for obstruction of justice based on the attempted escape.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____