# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3350

_____

United States of America

*Plaintiff - Appellee*

v.

Leonard Dwayne Hill

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: June 16, 2016
Filed: August 29, 2016

_____

Before MURPHY, BRIGHT, and SHEPHERD, Circuit Judges.

_____

BRIGHT, Circuit Judge.

A jury convicted appellant-defendant Leonard Hill of being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g) and 924(e). On appeal, Hill challenges his conviction and the district court's[1] denial of his renewed motion

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

for acquittal. Hill argues: (1) the government constructively amended the indictment; (2) the government failed to establish the ammunition was in or affecting interstate commerce; and (3) the de minimis connection to interstate commerce is insufficient to satisfy the Commerce Clause. We affirm the district court.

I.

In the early morning hours of July 10, 2014, St. Paul police responded to reports of gunfire outside of Willard's Bar in St. Paul, Minnesota. While police investigated the area, they arrested and frisked Hill. As a result of the frisk, police seized twenty-three rounds of Federal brand 9-millimeter Luger ammunition from Hill.

A grand jury indicted Hill on August 18, 2014, charging him with one count of being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g) and 924(e). Specifically the indictment stated that Hill "did knowingly possess, in and affecting interstate and foreign commerce, ammunition, as defined by Title 18, United States Code, Section 921(17)(A), that is, 23 live rounds of Federal brand 9-millimeter Luger ammunition, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e)(1)."

Hill pled guilty on September 26, 2014. Two months later, however, he moved to withdraw his plea. The district court granted Hill's motion and he proceeded to trial. Before trial, Hill stipulated that he knowingly possessed ammunition and was a convicted felon. Therefore, the only remaining issue at trial was whether Hill's possession of the ammunition was in or affecting interstate commerce.

At trial, the government presented expert testimony from Steve Rodgers, the product safety manager and fifteen-year employee for Vista Outdoor, the parent company of Federal Cartridge Ammunition. In his examination of the ammunition,

Rodgers randomly disassembled two of the twenty-three rounds seized from Hill and separated them into the four major components that form a round of ammunition: (1) the primer, (2) the case, (3) the propellent powder, and (4) the bullet. Rodgers dated the ammunition as being no older than 2011 and after discussing the manufacturing origin of each component, Rodgers determined that three out of the four components– including the primer, case, and bullet–were all manufactured by Federal Cartridge in Minnesota.

Rodgers concluded that the propellent powder was manufactured outside of Minnesota. To justify his conclusion, Rodgers testified that Federal Cartridge does not manufacture its own propellent powder but instead purchases 95% of it from two domestic sources–located in St. Marks, Florida, or Radford, Virginia–and the remaining 5% from international sources. Further, Rodgers opined that the propellent powder from the two rounds of ammunition he disassembled derived from St. Marks, Florida, specifically because he recognized the propellent powder was "ball powder," which is a unique manufacturing process specific to Federal Cartridge's supplier in St. Marks. Finally Rodgers testified that the remaining twenty-one rounds were identical to the two rounds he had randomly disassembled and therefore his testimony applied to those rounds as well.

At the close of the government's case, Hill moved for a judgment of acquittal which the district judge denied. The jury returned a guilty verdict. On August 13, 2015, Hill filed a renewed motion for judgment of acquittal, which the district court again denied. On October 15, 2015, the district court sentenced Hill to 192-months' imprisonment. Hill timely filed this appeal.

## II.

Hill makes three arguments on appeal. He first argues the government constructively amended the indictment by presenting evidence at trial of how the

individual components of ammunition were in or affecting interstate commerce rather than the ammunition as a whole. Second, the district court should have granted Hill's motion for acquittal because the government failed to establish the propellent powder component was manufactured outside of Minnesota at the time Federal Cartridge manufactured the ammunition seized from Hill–which is anywhere between 2011 and the date law enforcement seized the ammunition from Hill. Lastly, even if the propellent powder was in or affecting interstate commerce, this de minimis connection to interstate commerce is insufficient to satisfy the Commerce Clause.

A.

We review de novo whether a constructive amendment to the indictment occurred. United States v. Renner, 648 F.3d 680, 686 (8th Cir. 2011). Hill argues the government created a fatal constructive amendment to the indictment because it listed ammunition as a whole as being in or affecting interstate commerce instead of the individual components, which is what the government presented evidence on at trial. We disagree.

"A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner–often through the evidence presented at trial or the jury instructions–that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." United States v. Johnson, 719 F.3d 660, 668 (8th Cir. 2013) (quoting United States v. Whirlwind Soldier, 499 F.3d 862, 870 (8th Cir. 2007)). In evaluating a constructive amendment claim, this court "consider[s] whether the admission of evidence or the jury instructions created a 'substantial likelihood' that the defendant was convicted of an uncharged offense." Id.

The government did not create a fatal constructive amendment to the indictment because the ammunition components were necessarily included in the

-4-

indictment by statutory definition of the term ammunition. The indictment provides that Hill knowingly possessed ammunition "as defined by Title 18, United States Code, Section 921(17)(A)[.]" Under 18 U.S.C. § 921(17)(A), ammunition is defined as "ammunition or cartridge cases, primers, bullets, or propellent powder designed for use in any firearm." Accordingly, the evidence presented at trial did not create a "substantial likelihood" that Hill was convicted of an uncharged offense because the individual components of ammunition were necessarily included in the indictment language. The government therefore did not constructively amend the indictment.

B.

"This court reviews de novo the district court's denial of a motion for acquittal based on insufficiency of the evidence." United States v. Gant, 721 F.3d 505, 510 (8th Cir. 2013) (quoting United States v. Tyerman, 701 F.3d 552, 564 (8th Cir. 2012)). "On review, evidence is viewed most favorably to the verdict, giving it the benefit of all reasonable inferences. Reversal is appropriate only where no reasonable jury could find all the elements beyond a reasonable doubt." Id. (quoting United States v. Aldridge, 664 F.3d 705, 715 (8th Cir. 2011)).

Hill argues there was insufficient evidence to establish the propellent powder was manufactured outside of Minnesota between 2011 and the date of his arrest and therefore the government failed to prove the ammunition was in or affecting interstate commerce. We disagree.

Based on Rodgers's expert testimony, a reasonable jury could find beyond a reasonable doubt that Federal Cartridge used propellent powder manufactured outside of Minnesota at the time it produced the ammunition seized from Hill. Rodgers–a fifteen-year employee and trained expert in identifying Federal Cartridge products–testified that Federal Cartridge does not manufacture any of its own propellant powder but rather it is "[a]ll purchased" outside the state of Minnesota.

(Trial Tr. p. 156). Not only did Rodgers conclude the propellent powder was manufactured outside of Minnesota, but he was able to identify the specific supplier for the ammunition seized from Hill because he recognized it as "ball powder" unique to St. Marks, Florida. In viewing all reasonable inferences in favor of the verdict, we find a reasonable jury could find that Federal Cartridge used propellent powder manufactured outside of Minnesota in its production of the ammunition seized from Hill. Accordingly, the government established the ammunition seized from Hill was in or affecting interstate commerce.

## C.

"This court reviews federal constitutional questions de novo." United States v. Nash, 627 F.3d 693, 696 (8th Cir. 2013). Hill argues that even if the propellent powder traveled interstate, the de minimis connection to interstate commerce is insufficient to satisfy the Commerce Clause. Hill's argument is foreclosed by binding precedent.

In United States v. Mosby, the defendant was a convicted felon charged with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g) for possessing assembled cartridges manufactured in Minnesota but which were comprised of components manufactured out-of-state. 60 F.3d 454, 457 (8th Cir. 1995). We held that ammunition assembled from components which had traveled in interstate commerce was in commerce for purposes of 18 U.S.C. § 922(g)(1) even though the ammunition itself had been assembled intrastate. Id. The facts of this case are analogous to Mosby and we are bound by our holding in that case. Therefore, the propellent powder component manufactured in interstate commerce is sufficient to satisfy the Commerce Clause.

## III.

For the foregoing reasons, we affirm the district court.

_____